JUSTICE HOOD delivered the Opinion of the Court.
¶ 1 Respondent John Stellabotte owned a towing company that he used to illegally tow cars and then demand payment from the owners. At the time he did this, his thefts constituted a class 4 felony. But before he had been convicted and sentenced, the General Assembly changed the theft statute to make the crime a class 5 felony, with a correspondingly lower sentence. The amendment to the theft statute did not say whether it applied prospectively or retroactively. Without any party bringing this statutory change to the trial court's attention, it sentenced Stellabotte, as relevant here, for two class 4 felony counts under the old theft statute.
¶ 2 Stellabotte appealed, arguing he should have been sentenced for two class 5 felonies under the amended statute. A division of the court of appeals agreed, reversing on this point, albeit in a split opinion. Because the statutory amendment was silent on its application, the majority reasoned that Stellabotte should have received the benefit of its ameliorative effects under section 18-1-410(1)(f), C.R.S. (2017), and a line of cases reaching the same result. Judge Dailey disagreed, reasoning that ameliorative legislation applies only prospectively-under sections 2-4-202 and 2-4-303, C.R.S. (2017), and a different line of cases echoing that principle-unless the General Assembly indicates its intent for the legislation to apply retroactively.
¶ 3 In this opinion, we hold that ameliorative, amendatory legislation applies retroactively to non-final convictions under section 18-1-410(1)(f), unless the amendment contains language indicating it applies only prospectively. In reaching this conclusion, we clarify that our decision in People v. Thomas, 185 Colo. 395, 525 P.2d 1136 (1974) (allowing retroactive application of ameliorative statutory amendments under section 18-1-410(1)(f)[1] ), remains good law and governs here. We further explain that section 18-1-410(1)(f) 's retroactive application for changes *176 in criminal law acts as an exception to the general presumption of prospectivity that sections 2-4-202 and 2-4-303 provide. The division properly concluded that the theft amendment applies retroactively to cases involving convictions that were not final on the effective date of the amendment.
¶ 4 So, we affirm the division's judgment and remand for further proceedings consistent with this opinion.
I. Facts and Procedural History
¶ 5 John Stellabotte owned and operated a towing company. In 2012, he illegally towed two cars valued between $1,000 and $20,000-demanding money from each owner for their return.
¶ 6 The People charged Stellabotte with, among other things, felony theft. At that time, Stellabotte's actions constituted a class 4 felony. But in 2013, the General Assembly amended the theft statute, lowering the classification of theft for items valued between $5,000 and $20,000 to a class 5 felony. The 2013 amendment is silent regarding whether it applies prospectively or retroactively. A year after this change, a jury found Stellabotte guilty of aggravated motor vehicle theft, two felony theft counts, and a misdemeanor theft count. And the trial court found Stellabotte to be a habitual offender, sentencing him to a concurrent twenty-four years for the two felony theft counts under the old theft statute.[2]
¶ 7 Neither the People nor Stellabotte brought the 2013 reclassification to the trial court's attention. But had Stellabotte been sentenced under the 2013 theft statute, he would have received twelve years, assuming the trial court sentenced the defendant concurrently.[3] Stellabotte appealed, arguing among other things that he should have received the benefit of the 2013 amendment's reclassification.
¶ 8 In a split, published opinion, a division of the court of appeals agreed, reversing in relevant part. Following People v. Boyd, 2015 COA 109, 395 P.3d 1128 (concluding that although Amendment 64 did not state a clear intent of retroactive application, it nevertheless applied retroactively to the defendant's conviction for possession of marijuana), aff'd on other grounds, 2017 CO 2, 387 P.3d 755, and People v. Russell, 2014 COA 21M, 396 P.3d 71 (same), aff'd on other grounds, 2017 CO 3, 387 P.3d 750, the majority concluded the amendment to the theft statute applied retroactively to Stellabotte's felony theft convictions under section 18-1-410(1)(f) because the amendment was enacted while his case was pending in the trial court. Judge Dailey's dissent reasoned Boyd and Russell are inapposite because those cases concerned a constitutional amendment, not an amended statute. In his view, sections 2-4-202 and 2-4-203 and related precedent foreclose retroactive application of ameliorative criminal legislation unless the General Assembly clearly intends for it to be applied retroactively.
¶ 9 The People appealed and we granted certiorari[4] to review this case and a related case in People v. Patton, 2018 CO 67, 421 P.3d 184, which we also decide today.
II. Standard of Review
¶ 10 This case involves questions of statutory interpretation, which we review de novo. State Farm Mut. Auto. Ins. Co. v. Fisher, 2018 CO 39, ¶ 12, 418 P.3d 501, 504.
III. Analysis
¶ 11 With conflicting precedent and statutes supporting their divergent positions, the *177 parties dispute whether the 2013 amendment to the theft statute applies retroactively. We start with an overview of the applicable cases, and clarify that our decision in People v. Thomas, 185 Colo. 395, 525 P.2d 1136 (1974) (allowing retroactive application of ameliorative statutory amendments under section 18-1-410(1)(f) ), remains good law and governs here. Next, we turn to the conflicting statutes at issue, and we explain why section 18-1-410(1)(f) controls in this case. Finally, we conclude that the theft amendment applies retroactively to cases involving convictions that were not final on the effective date of the amendment.
A. Thomas Remains Good Law and Governs Here
¶ 12 The theft amendment is silent regarding whether it applies retroactively or prospectively, and the relevant legislative history offers no guidance on this point either. See ch. 373, sec. 1, § 18-4-401(2)(g), 2013 Colo. Sess. Laws 2195, 2195-96, 2202.
¶ 13 Both parties point to cases from this court that-at first blush-appear to support their sides. One line of cases follows this court's decision in Thomas, which holds defendants should receive the benefit of amendatory legislation that became effective at any time before the conviction became final on appeal. A different, more recent line of cases suggests that a defendant can't receive such a benefit unless the General Assembly clearly indicates its intent for the legislation to apply retroactively. See Riley v. People, 828 P.2d 254 (Colo. 1992).
¶ 14 The People argue that the division erred in concluding that the theft statute's amendments apply retroactively to lessen Stellabotte's sentence. They claim Colorado courts consistently rely on the presumption (articulated in the latter line of cases) that statutes apply prospectively unless the statute expressly states it applies retroactively. Stellabotte disagrees. He contends Thomas applies here and that the more recent cases upon which the People rely are inapposite.
¶ 15 To resolve this case we must delve into our precedent on whether ameliorative statutory changes apply retroactively to benefit criminal defendants whose convictions are not yet final on direct appeal.
¶ 16 In Thomas, the defendant was charged with attempted burglary, but before he was convicted and sentenced, the legislature changed the sentencing scheme, which lowered the degree of crime for his offense and thus, the maximum penalty he could have received. 525 P.2d at 1137. The statutory change didn't say whether it applied prospectively or retroactively. Ch. 121, § 40-2-101, 1972 Colo. Sess. Laws 414, 414-15. Regardless, the trial court convicted and sentenced the defendant under the old statute. Thomas, 525 P.2d at 1137. While his case was pending on direct appeal, the defendant filed a motion for post-conviction review, under the identically worded predecessor to section 18-1-410(1)(f)(I). Thomas, 525 P.2d at 1137. Section 18-1-410(1)(f)(I) provides relief where a defendant alleges that "there has been significant change in the law, applied to the applicant's conviction or sentence, allowing in the interests of justice retroactive application of the changed legal standard." Relying on that statutory provision, plus the identically worded predecessor to section 18-1-103(2), C.R.S. (2017),[5] this court reasoned the defendant was entitled to the benefit of the amendatory legislation. Thomas, 525 P.2d at 1137-38. The Thomas court further noted that the "view that amendatory legislation mitigating the penalties for crimes should be applied to any case which has not received final judgment finds substantial support in the common law." Id. at 1138 (emphasis added and citations omitted).
¶ 17 And in People v. Thornton we extended the Thomas rule to apply to defendants seeking the benefit of ameliorative changes *178 in sentencing laws on direct appeal. 187 Colo. 202, 529 P.2d 628, 628 (1974). There, a month after the defendant's sentencing, the legislature changed the presumptive sentencing range from a set range to indeterminate. Id. This statutory change, like the one in Thomas, was silent on whether it applied prospectively or retroactively. Ch. 145, sec. 1, § 39-11-101, 1972 Colo. Sess. Laws 503, 503-04. Concluding that the defendant should benefit from the new indeterminate sentencing law, the Thornton court remarked that Thomas established that a "defendant is entitled to the benefits of amendatory legislation which mitigates penalties for crimes, when relief is sought before finality has attached to the judgment of conviction." 529 P.2d at 628.
¶ 18 Numerous cases throughout the 1970s applied the Thomas holding to provide convicted criminal defendants the benefit of amendatory legislation enacted before their convictions became final on appeal. See, e.g., People v. Griswold, 190 Colo. 136, 543 P.2d 1251, 1253 (1975) (holding defendant was entitled to resentencing under an indeterminate sentencing scheme that was enacted after the date he committed his offense); People v. Truesdale, 190 Colo. 286, 546 P.2d 494, 497 (1976) (same); Glazier v. People, 193 Colo. 268, 565 P.2d 935, 936 (1977) (holding defendant was entitled to subsequent change from felony conviction to petty offense); People v. Bloom, 195 Colo. 246, 577 P.2d 288, 292 (1978) (holding defendant was entitled to ameliorative benefits of July 1975 amendment that removed marijuana from list of narcotic drugs and reclassified it as a dangerous drug).
¶ 19 But then our articulation of the Thomas rule began to evolve. In People v. Macias, this court confronted legislation that lowered sentences for those convicted of selling narcotics. 631 P.2d 584, 585-87 (Colo. 1981). This legislation, however, expressly said it applied "to offenses committed on or after" July 1, 1979. Id. at 586. Despite the fact that the defendants in Macias had committed their crimes before the legislature enacted the amendatory sentencing legislation, the trial court sentenced them under the new statute, relying on Thomas. See id. at 585-86. We reversed, noting the trial court erred in sentencing them so because the statute was "clearly limited in application to offenses committed on or after July 1, 1979." Id. at 587.
¶ 20 Confronting ameliorative changes to the theft statute that stated the changes applied only prospectively, this court concluded that the defendant in People v. McCoy-like the defendants in Macias-could not receive the benefit of lower sentencing under the new statute. 764 P.2d 1171, 1174 (Colo. 1988). Curiously, however, we cited to Thornton and Thomas for the proposition that we had "previously held that a defendant should receive the benefit of amendatory legislation mitigating the penalties for crimes committed prior to the new legislation when the amendatory legislation expressly provides for retroactive application." Id. (emphasis added). Citing to Thomas and Thornton for that proposition was strange because, as noted above, the statutory changes there were silent-not express-on whether they applied prospectively or retroactively. We also cited to Macias for the following proposition: "Our cases also establish that a defendant does not receive any ameliorative benefit when retroactive application of the amendatory legislation is clearly not intended by its own terms." Id.
¶ 21 And language we used in Riley v. People, a few years after McCoy, muddied the waters even further. In that case we confronted a criminal statute that expressly provided for only prospective application. Riley, 828 P.2d at 256. So, we held accordingly-no retroactive application. Id. at 259. Riley then cited to McCoy and Macias for the following proposition: "In subsequent cases we have emphasized that a defendant is not entitled to the ameliorative effects of amendatory legislation if the General Assembly has not clearly indicated its intent to require such retroactive application." Id. at 258 (emphasis added). But Riley appears to have flipped what we actually said in those cases. See McCoy, 764 P.2d at 1174 ("Our cases also establish that a defendant does not receive any ameliorative benefit when retroactive application of the amendatory legislation is clearly not intended by its own terms."); Macias, 631 P.2d at 587 ("[I]t is clear on its *179 face that it applies only to offenses committed on or after July 1, 1979. When the language of a statute is clear, we must give the statute effect as written.").
¶ 22 So, this is where we're left: We've gone from the Thomas rule favoring retroactively applying ameliorative legislation to non-final convictions, to statements in Riley suggesting that retroactive relief remains unavailable unless the General Assembly expressly provides it. Compare Thomas, 525 P.2d at 1137, with Riley, 828 P.2d at 258.
¶ 23 The People argue this court's more recent cases in Macias, McCoy, and Riley govern because either (1) they abrogated Thomas or (2) Thomas's reach was merely limited to that specific time period because of the legislature's overhaul of Colorado's criminal code in 1972. Because the General Assembly revised the entire criminal code in 1972, the People reason Thomas's reach was limited to applying ameliorative aspects of the new criminal code to offenses committed before its effective date in order to achieve uniformity.
¶ 24 Stellabotte counters that Thomas and the cases following it remain good law because none of the latter cases overrule or abrogate Thomas. Plus, he argues that Macias, McCoy, and Riley are inapposite because the statutes at issue in those cases expressly stated that they applied only prospectively but the theft statute here, like those in the cases following Thomas, is silent on its application.
¶ 25 We agree with Stellabotte and conclude that Thomas remains good law and governs here for several reasons.
¶ 26 First, we think Thomas and Thornton provide a rule that gives convicted criminal defendants the benefit of amendatory legislation that became effective at any time before the conviction became final on direct appeal under section 18-1-410(1)(f). We are unpersuaded by the People's efforts to limit Thomas's rule to the 1972 code, because we have applied the Thomas rule to ameliorative statutory amendments that the General Assembly enacted even after the 1972 criminal code overhaul. See, e.g., Bloom, 577 P.2d at 292 (holding defendant was entitled to ameliorative benefits of July 1975 amendment that removed marijuana from list of narcotic drugs and reclassified it as a dangerous drug); Glazier, 565 P.2d at 936 (giving defendant benefit of ameliorative 1975 legislation that reduced his sentence for marijuana possession from five-to-eight years in prison to a $100 fine).
¶ 27 And Thomas didn't couch its holding on retroactivity in the narrow terms of the then-new 1972 criminal code. Instead, Thomas and several cases following it spoke generally about how retroactivity for statutory amendments ameliorating the penalty for crimes committed before the legislation was enacted also had support in the common law. See, e.g., Thomas, 525 P.2d at 1138 ("The view that amendatory legislation mitigating the penalties for crimes should be applied to any case which has not received final judgment finds substantial support in the common law."); Truesdale, 546 P.2d at 497 ("Under our decision in [ Thomas,] a defendant is entitled to the benefits of amendatory legislation which mitigates penalties for crimes when the relief is sought before finality has attached to the judgment of conviction. Accordingly, on remand, defendant should be re-sentenced."); Glazier, 565 P.2d at 936 ("As we have repeatedly held, a defendant is entitled to the benefits of amendatory legislation when relief is sought before finality has attached to the judgment of conviction.").
¶ 28 Second, we think (and now clarify) that our statements in Riley and McCoy-that retroactivity occurs only if the General Assembly expressly provides it-are dicta and thus don't govern here. The People maintain those cases clearly announced a bright-line rule that "a defendant is not entitled to the ameliorative effects of amendatory legislation if the General Assembly has not clearly indicated its intent to require such retroactive application." Riley, 828 P.2d at 258. But as Stellabotte points out, Macias, McCoy, and Riley confronted a different set of facts. The statutes there, unlike the silent one here, expressly provided for only prospective application. Indeed, when looking at the expressly prospective statute in Macias, this court observed that when "the language of a statute is clear, we must give the statute *180 effect as written." 631 P.2d at 587. Thus, because the statutes in Riley, McCoy, and Macias expressly provided that they applied prospectively, we clarify that our statements in those cases about the legislature's need to clearly indicate its intent for retroactive application were "not necessary to the decisions in those cases [and were] dicta that do[ ] not control the case before us." Town of Eagle v. Scheibe, 10 P.3d 648, 652 (Colo. 2000). To the extent the dicta in Riley and McCoy conflict with the rule in Thomas, we disavow that language.
¶ 29 Finally, none of the latter cases ( Macias, McCoy, and Riley ) purported to (nor actually do) overrule or abrogate Thomas. Despite the People's best arguments to the contrary, both lines of cases can be reconciled because Macias, McCoy, and Riley ultimately answered a different question: What do we do when the General Assembly expressly provides that a statute applies only to offenses committed "on or after" a certain date? And based on our principles of statutory interpretation, Macias, McCoy, and Riley were correct-we apply expressly prospective statutes only prospectively. But the statutes at issue in the Thomas line of cases-like the theft statute at issue here-were silent on prospectivity. And when the General Assembly does not indicate statutory changes are to apply only prospectively, then, under Thomas, defendants receive the benefit of the amendatory legislation to their non-final convictions.[6]
¶ 30 Despite clearing up this confusion in our precedent, we aren't finished. The People highlight sections 2-4-202 and 2-4-303, which provide a presumption that statutes apply only prospectively. And our precedent has thus far failed to address how we should read section 18-1-410(1)(f) in light of the presumptions in those statutes. So, we turn to the following question next: Do the general presumptions of prospective application in sections 2-4-202 and 2-4-303 undermine section 18-1-410(1)(f) ?
B. Section 18-1-410(1)(f) Is an Exception to the Presumptions of Prospective Application in Sections 2-4-202 and 2-4-303
¶ 31 The People point to sections 2-4-202[7] and 2-4-303[8] to argue that the theft statute amendment here applies prospectively. Stellabotte disagrees, arguing instead that sections 2-4-202 and 2-4-303 don't apply here.
¶ 32 To resolve this disagreement, we again turn to well-established principles of statutory interpretation. "In construing a statute, we seek to give effect to the General Assembly's intent by according words and phrases their plain and ordinary meanings." Fisher, ¶ 12, 418 P.3d at 504. And we "must read and consider the statutory scheme as a whole to give consistent, harmonious and sensible effect to all its parts." Martin v. People, 27 P.3d 846, 851 (Colo. 2001) (internal quotation marks and citation omitted). "We must adopt a construction that avoids or resolves potential conflicts, giving effect to all legislative acts, if possible." Huber v. Colo. Mining Ass'n, 264 P.3d 884, 892 (Colo. 2011). But if conflicting statutes can't be reconciled, we have adopted a canon of statutory construction that a specific statutory provision "acts as an exception to that general provision, carving out a special niche from the general rules to accommodate a specific circumstance." Martin, 27 P.3d at 852 ; see also § 2-4-205, C.R.S. (2017) ("If a general provision conflicts with a special or local provision, it shall be construed, if possible, so that effect is given to both. If the conflict between *181 the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.").
¶ 33 In applying these principles, we conclude that section 18-1-410(1)(f) prevails. Subsection 18-1-410(1)(f)(I) provides for retroactive application of significant change in the law to a defendant's conviction or sentence but, under subsection (II), during only direct appeal, before the conviction is final. Thus, it applies only to criminal prosecutions and during only a narrow procedural timeframe. See § 18-1-410(1)(f). It follows, then, that section 18-1-410(1)(f)(I)-(II) is a more specific provision than the broad presumptions of prospective application set out in sections 2-4-202 and 2-4-303. See § 2-4-202 ("A statute is presumed to be prospective in its operation."). And as the more specific provision, section 18-1-410(1)(f) acts as an exception to sections 2-4-202 and 2-4-303. If sections 2-4-202 and 2-4-303 controlled, then section 18-1-410(1)(f) would be rendered superfluous. By interpreting section 18-1-410(1)(f) as an exception to those two broader statutes, we "give full and sensible effect to the entire statutory scheme." Martin, 27 P.3d at 852.
¶ 34 The People argue we could reconcile the conflicting statutes by simply viewing section 18-1-410(1)(f) as only a procedural mechanism that allows defendants to benefit from amendatory legislation when the General Assembly expressly makes it retroactive. We disagree. The People point to nothing in section 18-1-410 's plain language that would support such a narrow reading. And adopting such a reading would ignore cases like Thomas where we applied section 18-1-410 to provide retroactive application when the amendatory statute was silent on retroactivity.
¶ 35 Accordingly, we conclude section 18-1-410(1)(f) serves as an exception to the general presumption of prospectivity that sections 2-4-202 and 2-4-303 provide.
C. Application
¶ 36 Here, the parties agree that Stellabotte committed the thefts before the amendment to the theft statute, but was convicted and sentenced to (among other things) two counts of felony theft after the amendment was enacted. As a habitual offender, the court sentenced Stellabotte to twenty-four years. But under the 2013 amendment, Stellabotte would have received just twelve years, assuming the court sentenced the defendant concurrently. As noted above, the 2013 amendment to the theft statute is silent as to its application. See ch. 373, sec. 1, § 18-4-401(2)(g), 2013 Colo. Sess. Laws 2195, 2195-96, 2202. So, under Thomas and section 18-1-410(1)(f), we conclude Stellabotte should have received the benefit of the 2013 amendment, thus receiving a twelve-year sentence on each of the two theft counts following his adjudication as a habitual offender under section 18-1.3-801. Like the division majority below, we note that our analysis and holding applies only to Stellabotte's felony theft convictions-not his aggravated motor vehicle theft or misdemeanor theft convictions.
¶ 37 We note that our decision today is a narrow one. Our holding does not provide relief to simply anyone who has been sentenced under a provision that has since been changed. Instead, relief under an amended statute is available only to those defendants whose convictions were not final when the amendment was enacted. See § 18-1-410(1)(f)(II) ("The ground set forth in this paragraph (f) may not be asserted if, prior to filing for relief pursuant to this paragraph (f), a person has not sought appeal of a conviction within the time prescribed therefor or if a judgment of conviction has been affirmed upon appeal."). Moreover, the General Assembly, of course, remains free to limit any future amendatory legislation's reach by including language specifying prospective application that would then foreclose retroactive relief under section 18-1-410(1)(f). See Macias, 631 P.2d at 587.
IV. Conclusion
¶ 38 Our decision in People v. Thomas, 185 Colo. 395, 525 P.2d 1136 (1974), remains good law and governs here. Section 18-1-410(1)(f) 's retroactive application for changes in criminal law acts as an exception to the general presumption of prospectivity that *182 sections 2-4-202 and 2-4-303 provide. Accordingly, we hold that ameliorative, amendatory legislation applies retroactively to non-final convictions under section 18-1-410(1)(f), unless the amendment contains language indicating it applies only prospectively. Because the 2013 amendment to the theft statute in this case is silent on whether it applies prospectively, Stellabotte should have received the benefit of retroactive application in his sentencing.
¶ 39 Therefore, we affirm the judgment of the division and remand for further proceedings consistent with this opinion.
CHIEF JUSTICE COATS dissents, and JUSTICE BOATRIGHT joins in the dissent.
JUSTICE GABRIEL does not participate.

We note that Thomas cited to the identically worded predecessor to section 18-1-410(1)(f)(I). 525 P.2d at 1137 (citing § 40-1-510(1)(f), C.R.S. (1973) ). For clarity, we refer to the modern version (section 18-1-410(1)(f) ) throughout this opinion.

Under the habitual offender statute, § 18-1.3-801, C.R.S. (2017), the trial court sentenced Stellabotte to four times the maximum presumptive sentence of six years for a class 4 felony, resulting in (among other things) a concurrent twenty-four year sentence for his two felony theft convictions at issue here.

The maximum presumptive sentence for a class 5 felony is three years, § 18-1.3-401, C.R.S. (2017), which results in a twelve-year sentence under the habitual offender statute, § 18-1.3-801, on each count.

We granted certiorari to review the following issue:
Whether the court of appeals erred in holding that an amendment to a statute that does not specify whether it applies prospectively or retroactively applies retroactively to cases that are pending when the amendment was enacted.

Section 18-1-103(2) provides as follows:
Except as otherwise provided by section 18-1-410, the provisions of this code do not apply to or govern the construction of, prosecution for, and punishment for any offense committed prior to July 1, 1972, or the construction and application of any defense to a prosecution for such an offense. Such an offense shall be tried and disposed of according to the provisions of law existing at the time of the commission thereof in the same manner as if this code had not been enacted. All pending actions shall proceed to final disposition in the same manner as if this code had not been enacted.

We reach this result based on our reading of Thomas and related cases, and thus, need not discuss our decisions in Boyd, 2017 CO 2, ¶ 1, 387 P.3d at 755, and Russell, 2017 CO 3, ¶ 1, 387 P.3d at 751. Therefore, we agree with the division's conclusion, albeit based on different precedent.

"A statute is presumed to be prospective in its operation."

"The repeal, revision, amendment, or consolidation of any statute or part of a statute or section or part of a section of any statute shall not have the effect to release, extinguish, alter, modify, or change in whole or in part any penalty, forfeiture, or liability, either civil or criminal, which shall have been incurred under such statute, unless the repealing, revising, amending, or consolidating act so expressly provides...." (Emphasis added.)