The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
May 30, 2019

## 2019COA84

## No. 16CA1145, *People v. Lawrence* — Crimes — Theft; Sentencing — Amendatory Statutes — Retroactive Application

A division of the court of appeals addresses the retroactivity of
an amendment to the theft statute in light of the supreme court's
decision in *People v. Stellabotte*, 2018 CO 66. The division
concludes that, pursuant to *Stellabotte*, a defendant is entitled to
have his or her theft conviction reclassified under the amended
statute. But when the value of the items the defendant stole is
disputed, further proceedings are required to determine the stolen
items' value if the prosecutor wants to pursue a conviction for theft
commensurate with the maximum value that the evidence could
support. On remand, however, the prosecutor may elect to request
that a conviction enter for theft of items valued at the lowest
amount that the jury's verdict supports.

The division also concludes that the evidence was sufficient to sustain the defendant's convictions for securities fraud; that the trial court made no error with respect to instructing the jury on the mental state required to convict the defendant of securities fraud; that the trial court made no error by admitting expert testimony that embraces an ultimate issue of fact; and that the trial court made no error by excluding certain pieces of evidence the defendant contends were exculpatory.  Accordingly, the division reverses the theft conviction and affirms the two convictions for securities fraud.

Court of Appeals No. 16CA1145
Jefferson County District Court No. 15CR463
Honorable Todd L. Vriesman, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Shaun David Keller Lawrence,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE WELLING
Fox and Freyre, JJ., concur

Announced May 30, 2019

Philip J. Weiser, Attorney General, Brittany L. Limes, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jessica A. Pitts, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    A jury found defendant, Shaun David Keller Lawrence, guilty of theft for stealing items valued at $1000 or more but less than $20,000.  When he committed the crime, that theft was a class 4 felony.  § 18-4-401(2)(c), C.R.S. 2012.  But before trial the theft statute was amended.  *See* Ch. 373, sec. 1, 2013 Colo. Sess. Laws 2195-97.  Under the amended statute, that same range could be a class 1 misdemeanor up to a class 5 felony, depending on the value of the items stolen.  § 18-4-401(2)(e)-(g), C.R.S. 2018.

¶ 2    While this appeal was pending, the supreme court decided that a defendant whose conviction was not final is entitled to have his or her conviction reclassified based on the value of the item stolen under the amended theft statute.  *People v. Stellabotte*, 2018 CO 66.  But *Stellabotte* left unanswered the question we must answer here: When the evidence related to the value is disputed, how do we reclassify the crime under the amended statute?

¶ 3    We conclude that when the value of the items stolen is disputed, further proceedings are necessary to determine the classification of the theft, but that the prosecution may elect to request that a theft conviction enter for the lowest amount

supported by the jury's verdict.  Accordingly, we remand the case for further proceedings.

¶ 4    The remand, however, only involves Lawrence's theft conviction.  He also appeals convictions he received for two counts of securities fraud.  We affirm those convictions.

## I.    Background

¶ 5    Lawrence was at a casino when he met D.B., who worked there as a cashier.  During their conversation, Lawrence told D.B. that he ran his own security and surveillance company.  D.B. asked Lawrence if he was hiring.  Lawrence responded that she couldn't work for him until she was properly trained, but that he was seeking investors so that he could expand his business.

¶ 6    The two began negotiating and, a few weeks later, agreed that D.B. could purchase twenty percent of the company for $6000.  D.B. later purchased an additional ten percent of the company for another $3000.  Both times, D.B. followed Lawrence's instructions and deposited money directly into his personal bank account.

¶ 7    Lawrence rented an office, registered the company with the Secretary of State, and began creating a website.  During this time, D.B. repeatedly asked Lawrence to begin the training so that she

2

could become an employee with the company. Lawrence let D.B. do one service of process job, and routinely scheduled trainings for D.B., only to cancel them at the last minute. Occasionally, D.B. would visit the office, but within a few months, Lawrence stopped responding to D.B.'s calls altogether. At one point, D.B. visited the office and found it empty except for one computer.

¶ 8 D.B. filed a complaint with the Colorado Division of Securities (Division). The Division's investigation into Lawrence's bank account showed that his account had a negative balance the day D.B. made her initial investment and that he spent all $9000 on personal expenses, gambling, and entertainment within one month of D.B.'s deposits.

¶ 9 The Division referred the case to the prosecutor's office, and Lawrence was subsequently charged with two counts of securities fraud and one count of theft. A jury convicted him of all three charges.

## II. Analysis

¶ 10 Lawrence raises five arguments on appeal. First, he argues that the evidence supporting his convictions is insufficient. Second, he contends that the trial court failed to instruct the jury on the

mental state required to convict him of securities fraud. Third, he argues that the trial court erred by admitting the expert testimony of Colorado's Securities and Exchange Commissioner. Fourth, he argues that the trial court erred by excluding evidence that he contends was exculpatory. Finally, he argues that he is entitled to the maximum ameliorative benefit under an amendment to the theft statute. We address each contention in turn.

## A. Sufficiency of the Evidence

¶ 11    Lawrence first contends that there was insufficient evidence to support his convictions. We review de novo whether the evidence at trial was sufficient in quantity and quality to sustain a conviction. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010). In doing so, we must determine "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Id.* (quoting *People v. Bennett*, 183 Colo. 125, 130, 515 P.2d 466, 469 (1973)). We also must give the People the benefit of every reasonable inference that may be drawn from the evidence. *Id.* at 1292.

¶ 12    Lawrence first contends that there is insufficient evidence to support the convictions for securities fraud because the transaction did not involve a security. Second, he argues that there is insufficient evidence to support the theft conviction because there is no evidence that he intended to permanently deprive D.B. of her property. We reject both contentions.

## 1.    Evidence of a Security

¶ 13    To convict Lawrence for securities fraud, the prosecution needed to prove that he made a false or misleading statement "in connection with the offer, sale, or purchase of any security." § 11-51-501(1), C.R.S. 2018.

¶ 14    An "investment contract" is a security. *See* § 11-51-201(17), C.R.S. 2018. But a contract is an "investment contract" only if it is (1) a contract whereby a person invests his or her money (2) in a common enterprise and (3) is led "to expect profits solely from the efforts of the promoter or a third party." *Sec. & Exch. Comm'n v. W. J. Howey Co.*, 328 U.S. 293, 298-99 (1946); *Rome v. HEI Res., Inc.*, 2014 COA 160, ¶ 21 (applying *Howey* analysis to definition of "investment contract" under the Colorado Securities Act). Lawrence contends that the evidence at trial failed to establish that D.B.

expected to profit "solely" from Lawrence's efforts because she did some work for the company. The term "solely" in this context, however, is not to be construed literally. *Rome*, ¶ 21. Instead, the question is whether "the investor was 'led to expect profits derived from the entrepreneurial or managerial efforts of others.'" *Id.* (quoting *Toothman v. Freeborn & Peters*, 80 P.3d 804, 811 (Colo. App. 2002)).

¶ 15 The evidence at trial, when viewed in the light most favorable to the prosecution, showed that D.B. was working as a cashier at a casino when Lawrence came into the casino to gamble. The two began talking, and Lawrence said that he was thinking of starting a surveillance business. At the time, D.B. was expecting to receive a few thousand dollars from a legal settlement and was looking to invest that money. During their initial discussions, Lawrence told D.B. that working for him would be possible but that she would have to complete hundreds of hours of unpaid training before he would hire her to work for the company.

¶ 16 Despite knowing that it would be a long time before she was able to work for the company, D.B. purchased thirty percent of the company for $9000. D.B. believed that her money would be used

as a down payment for the purchase of ankle monitors, which would allow the company to start providing ankle monitoring services. Lawrence told D.B. that he had experience in ankle monitoring, and there is no indication from the record that D.B. had any similar experience.

¶ 17     This evidence was sufficient for the jury to have concluded that D.B. expected to profit solely from Lawrence's efforts. Throughout the transaction, D.B. believed that her investment and her potential employment were separate. Lawrence told her that she would have to provide hundreds of hours of free labor if she wanted to become an employee in addition to her investment, but she invested anyway. And while she visited the office a few times, D.B. said that Lawrence made all of the decisions related to the company and he did not consider her opinions. The record, when viewed in the light most favorable to the prosecution, shows that D.B. expected to profit solely from Lawrence's efforts.

¶ 18     True, D.B. tried to work for the company. But the only work she ever performed was a single service of process. She was not paid for this work, and the record isn't even clear whether Lawrence counted this toward her training requirement. Even if paid for the

one task, that an investor exerts some effort does not automatically preclude a finding that a transaction is an investment contract. *Williamson v. Tucker*, 645 F.2d 404, 418 (5th Cir. 1981); *Sec. & Exch. Comm'n v. Glenn W. Turner Enters., Inc.*, 474 F.2d 476, 482 (9th Cir. 1973) ("[T]he scheme is no less an investment contract merely because [the investor] contributes some effort as well as money to get into it.").

¶ 19 Accordingly, the evidence was sufficient to support the conviction for securities fraud.

### 2. Evidence of an Intent to Permanently Deprive

¶ 20 To obtain a conviction on the theft charge, the prosecution needed to prove that Lawrence knowingly obtained control over something of value of another, without authorization, and that he "[i]ntend[ed] to deprive the other person permanently of the use or benefit of the thing of value." § 18-4-401(1)(a), C.R.S. 2018. Lawrence now argues that there is no evidence that he intended to permanently deprive D.B. of her money because he worked toward building the business that would have resulted in a return on her investment.

8

¶ 21     When reviewing the record for sufficiency of the evidence, we must consider direct and circumstantial evidence. *Clark*, 232 P.3d at 1291. Evidence of a defendant's intent is usually only proved by relying on circumstantial evidence, and "the finder of fact may properly infer the intent to commit theft from the defendant's conduct and the circumstances of the offense." *People v. Mandez*, 997 P.2d 1254, 1264 (Colo. App. 1999). Evidence that the defendant knowingly used an owner's property in a manner "inconsistent" with the owner's "permanent use and benefit" is sufficient to establish an intent to effect a permanent deprivation. *People v. Pedrie*, 727 P.2d 859, 862 (Colo. 1986).

¶ 22     Here, the evidence showed that after Lawrence and D.B. agreed on her investment, he told her to deposit the money in his personal bank account. Over the next month, Lawrence used that money to go to casinos, for entertainment, and for other personal expenses. Lawrence never gave D.B. an accounting or update on the status of her investment despite the fact that their contract required him to send reports to her periodically. D.B. expected that her investment would be used as a down payment for the ankle monitors and other business expenses, not to fund Lawrence's

personal expenses. From this evidence, the jury could infer that Lawrence intended to permanently deprive D.B. of her money.

¶ 23    Lawrence contends that there was contrary evidence showing that he used the money for the company's expenses. Specifically, he argues that the evidence shows that he used some of D.B.'s money to rent an office, create a website, and register the business with the Secretary of State. Lawrence is correct that this evidence could support a conclusion that he did not intend to permanently deprive D.B. of her money, but the evidence is not insufficient simply because it conflicts. *People v. Carlson*, 72 P.3d 411, 416 (Colo. App. 2003) ("Where reasonable minds could differ, the evidence is sufficient to sustain a conviction."). Instead, we must view the evidence in the light most favorable to the prosecution, and here there was sufficient evidence from which the jury could infer Lawrence's intent to permanently deprive D.B. of her money.

¶ 24    Accordingly, the trial court committed no error by denying Lawrence's motion for judgment of acquittal as there was sufficient evidence to support the convictions.

## B. Jury Instruction on Mental State

¶ 25    Next, Lawrence argues that the trial court erred by not instructing the jury that it must find that he knew D.B.'s investment was a security.

¶ 26    The parties disagree on whether this argument is preserved. Lawrence contends that he didn't have to preserve the issue because a defendant may raise a sufficiency of the evidence argument premised on an issue of statutory interpretation for the first time on appeal. *People v. McCoy*, 2015 COA 76M, ¶ 8 (*cert. granted* Oct. 3, 2016). The People, on the other hand, argue that the issue is not preserved because Lawrence made a different, albeit related, argument at trial. *See People v. Lacallo*, 2014 COA 78, ¶ 8 (when a defendant fails to preserve sufficiency of the evidence argument, court of appeals reviews only for plain error). We need not resolve this dispute, however, because we conclude that the trial court did not commit an error.

¶ 27    Lawrence was charged under section 11-51-501(1)(b). That statute does not contain a mens rea element, but section 11-51-603(1), C.R.S. 2018, states that anyone who "willfully violates the provisions of section 11-51-501 commits a class 3 felony." The

11

term "willfully" as used in this statute is synonymous with "knowingly." *People v. Blair*, 195 Colo. 462, 467, 579 P.2d 1133, 1138 (1978).

¶ 28    Lawrence now contends that the prosecutor needed to prove that he knew he was offering to sell D.B. a security because the willfulness mens rea applies to each element of the crime. *See* § 18-1-503(4), C.R.S. 2018 ("When a statute . . . [specifies a] culpable mental state, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears."). Multiple divisions of this court, however, have concluded that "[p]roof of knowledge that an investment is a security is not required for a conviction of 'willful' securities fraud." *People v. Destro*, 215 P.3d 1147, 1151 (Colo. App. 2008); *see also People v. Pahl*, 169 P.3d 169, 185 (Colo. App. 2006) (rejecting argument that a defendant must know he or she is selling a security to support a conviction for securities fraud); *People v. Rivera*, 56 P.3d 1155, 1163 (Colo. App. 2002) (same). This is because "the mental state of 'willfully' only requires the actor to be 'aware that his conduct is of such nature or that such circumstance exists.'" *Pahl*, 169 P.3d at 185 (quoting section 18-1-501(6), C.R.S.

12

2018).  And requiring proof beyond that fact rises to the level of a conscious objective is appropriate only for specific intent crimes. *Id.*

¶ 29     Because Lawrence points to no justification for doing so, we decline to depart from these precedents.  Accordingly, we conclude that the trial court did not err by failing to instruct the jury that it needed to find that Lawrence knew he was offering D.B. a security.

### C.     Expert Testimony

¶ 30     At trial, Colorado's Securities and Exchange Commissioner, Gerald Rome, was qualified as an expert in securities law. Commissioner Rome testified about what qualifies as a security and why the contract at issue in this case was a security.  He also testified that the sale of a security is fraudulent when the seller misstates or omits material facts and then discussed what facts might be material.  Lawrence now contends that this testimony usurped the jury's role as the fact finder because Rome was allowed to provide expert opinions related to the ultimate factual issues in the case.  We disagree.

¶ 31     An expert may offer an opinion that embraces an ultimate issue of fact.  CRE 704.  But that testimony must not usurp the

13

jury's factfinding role.  *See People v. Rector*, 248 P.3d 1196, 1203 (Colo. 2011).

¶ 32    In *Pahl*, a division of this court addressed expert testimony similar to Rome's.  169 P.3d at 182.  There, the expert opined that the transaction involved a security and that the defendant's omissions of fact were material.  *Id.*  The division concluded this testimony did not usurp the jury's role because the jurors were properly instructed on the definition of a security and that they could disregard the expert's testimony.  *Id.*  The same thing occurred here.  Rome testified that an investment contract qualifies as a security and that the transaction at issue here qualified as an investment contract under *Howey*.  But the jurors were instructed that they did not have to accept the testimony of any expert and that jury instructions were the source of law they had to apply to the case.  The instructions provided the statutory definition of a "security," and from this definition the jurors were free to draw their own conclusions.

¶ 33    As to materiality, the trial court ruled that Rome could not testify about whether there were material misrepresentations in this case, and that he could testify about materiality only generally.

Rome then testified about the differences in what facts might be material to a person investing in a large company versus a person investing in a smaller company, and that a person investing in a smaller company would likely find facts related to the proprietor's finances and business acumen to be material. A trial court does not abuse its discretion by allowing an expert to provide general testimony about when facts might be considered material. *See People v. Prendergast*, 87 P.3d 175, 183 (Colo. App. 2003) (affirming trial court's decision to allow an expert witness to testify about legal standard for materiality in a securities fraud case).

¶ 34    Moreover, Rome did not usurp the jury's role because defense counsel thoroughly explored both the definition of a security and materiality on cross-examination and Rome gave no opinion as to whether Lawrence committed any of the crimes charged. *See Rector*, 248 P.3d at 1203 (factors relevant to determining whether an expert's testimony was proper under CRE 704 include whether the statements were "clarified on cross-examination" and whether the expert "opined that the defendant committed the crime").

¶ 35     Accordingly, we conclude that the trial court did not abuse its discretion by failing to preclude Rome from testifying on an issue of ultimate fact.

### D.     Exculpatory Evidence

¶ 36     Lawrence next argues that the trial court erred by excluding evidence that he contends was exculpatory.  The first piece of evidence was testimony that two law enforcement agencies told D.B. that her dispute with Lawrence was a civil, and not criminal, matter.  The remaining pieces of evidence were documents that corroborated Lawrence's argument that he did some work for the company.

¶ 37     Lawrence preserved his evidentiary arguments for review.  We review the trial court's evidentiary ruling for an abuse of discretion. *Davis v. People*, 2013 CO 57, ¶ 13.[1]  A trial court abuses its

---

[1] Lawrence contends that we should apply the constitutional harmless error standard because the preclusion of this evidence deprived him of his right to present a complete defense. Constitutional harmless error is a standard of reversal and not a standard of review.  *See Hagos v. People*, 2012 CO 63, ¶ 11 (Trial errors of a constitutional dimension "require reversal unless the reviewing court is 'able to declare a belief that [the error] was harmless beyond a reasonable doubt.'" (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967))).  Because we conclude that the

discretion if its ruling is manifestly arbitrary, unreasonable, or unfair, or is based on a misapprehension of the law. *People v. Gonzales*, 2019 COA 30, ¶ 7.

### 1. Testimony about Law Enforcement Agencies' Response to D.B.'s Complaint

¶ 38 Lawrence proffered evidence that both the Littleton Police Department and the Colorado Attorney General's Office told D.B. that her dispute with Lawrence was not a criminal matter and that those agencies had declined to prosecute Lawrence. The prosecution made a pretrial motion in limine to preclude Lawrence from asking D.B. about these conversations, and the trial court granted the motion.

¶ 39 Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. But even relevant evidence may be excluded if its probative value is substantially outweighed by the "danger of unfair prejudice, confusion of the issues, or misleading

---

trial court did not err, we need not address whether the alleged error requires reversal.

the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." CRE 403.

¶ 40 That a law enforcement agency, at one time, thought this was a civil dispute is of no consequence to determining whether Lawrence committed a crime. Many considerations go into the People deciding whether to pursue criminal charges in any given case. *People v. Weiss*, 133 P.3d 1180, 1189 (Colo. 2006); *see also Sandoval v. Farish*, 675 P.2d 300, 303 (Colo. 1984) (discussing standards for reviewing a prosecutor's charging decision). The Littleton police and the Colorado Attorney General could've based their conclusions on any number of factors, none of which are discussed in the record. The trial court acted well within its discretion in finding that it would be misleading to tell the jury that two law enforcement agencies initially decided that Lawrence's conduct was civil and not criminal.

¶ 41 Nevertheless, Lawrence contends that this evidence is admissible as res gestae. Evidence is admissible as res gestae when it explains the setting in which the crimes occurred so as to provide context to the criminal episode. *People v. Galang*, 2016 COA 68, ¶ 15. The record shows that Lawrence had already committed his

crimes by the time D.B. contacted law enforcement agencies, so the agencies' conclusions would have provided no context for the crime.

¶ 42     Lawrence also argues that Rome's testimony opened the door to this evidence. Rome testified, on cross-examination, that he personally referred this case to the prosecutor's office after receiving D.B.'s complaint. A juror then asked whether there were "triggers that elevate a case from a civil to criminal matter, [and if so], what are they?"[2] Rome responded that there are many factors that go into the decision to refer a case to a prosecutor's office but that, ultimately, he makes the decision. This testimony did not open the door to the evidence that two other agencies had declined to prosecute because Rome's decision was wholly separate from decisions of those two agencies.

¶ 43     The statute authorizes the securities commissioner to refer evidence to the attorney general or district attorney, who have the discretion to prosecute the case. *See* § 11-51-603(3). But his

---

[2] Defense counsel objected to asking the juror's question, arguing that the question would elicit a response from Rome that wasn't previously disclosed. The trial court overruled the objection. The propriety of that ruling was not raised on appeal, and we offer no opinion as to whether it was an appropriate question.

referral does nothing to establish whether a crime was committed and is no different than anyone else's report of a suspected crime to a district attorney's office. Rome's testimony that he referred the case to the prosecutor was unrelated to the prior decisions of the other two law enforcement agencies and therefore did not open the door to evidence that those agencies declined to pursue charges.

¶ 44 Finally, Lawrence argues that this evidence could've been used to impeach Rome or D.B. Even for impeachment, this evidence was irrelevant as it related to Rome because he did not conclude that Lawrence had committed a crime; he simply made the decision to refer the case to the prosecutor's office.

¶ 45 Lawrence also tried to elicit evidence that D.B. threw away a letter from the attorney general that allegedly stated the dispute was not criminal. That D.B. may have thrown away such a letter has no bearing on her credibility or whether Lawrence committed any of the acts that he was accused of committing. As a result, the trial court didn't abuse its discretion in finding that any evidence related to the letter was irrelevant.

<h3 style="text-align:center">2.    Documentary Evidence</h3>

¶ 46    Lawrence proffered three documents that would allegedly demonstrate that he did some work for the company.  The trial court concluded that all three pieces of evidence were hearsay.[3] Hearsay is an out of court statement used to prove the truth of the matter asserted.  CRE 801(c).

¶ 47    First, during the cross-examination of the prosecutor's investigator, defense counsel offered documents from a website that purportedly showed that Lawrence registered the company with the Secretary of State.  Using these documents to prove that Lawrence registered the company with the Secretary of State, to prove that he did some work for the company, was hearsay, and the trial court did not abuse its discretion by excluding the documents.  Lawrence

---

[3] The prosecutor objected to the admission of these documents arguing that they were hearsay and that the witness couldn't lay the proper foundation.  In response, defense counsel argued that these documents could be admitted under the business records exception.  The trial court sustained the objection but did not state the basis for that ruling.  The record does not show that defense counsel asked the questions necessary to establish the foundation for admitting evidence pursuant to the business records exception. *See* CRE 803(6).  Moreover, even if defense counsel had asked, there is no indication that the investigator had the personal knowledge necessary to provide an adequate foundation for the admission of the exhibits as business records.  Accordingly, we address only whether the trial court erroneously excluded these documents as hearsay.

also made no attempt to introduce these documents through the business records exception, CRE 803(6), and the copies offered at trial were not self-authenticating, *see* CRE 902(11).

¶ 48 Next, Lawrence proffered a receipt for domain names that he allegedly bought for the company during the testimony of his own investigator. Like the Secretary of State documents, this receipt was offered to prove the truth of the matter that it asserted — that Lawrence expended funds in the course of doing some work for the company. Like the Secretary of State documents, Lawrence did not attempt to invoke the business records (or any other) exception to the hearsay rule. The trial court did not abuse its discretion by excluding the receipt.

¶ 49 Finally, Lawrence tried to introduce an email that he received in response to an inquiry he allegedly made to purchase ankle monitors. This document was also offered while Lawrence's investigator was testifying. The email was sent by a sales manager at a technology company who said that he was responding to a form that Lawrence had allegedly filled out on a website where he said he was "looking for ankle monitors and software." Lawrence wanted to use this email to prove that he did, in fact, try to procure ankle

monitors; therefore, it was hearsay. And, again, Lawrence did not argue to the trial court that any exception applied.

¶ 50    In sum, the trial court did not abuse its discretion by excluding testimony that the two law enforcement agencies declined to pursue charges, the Secretary of State documents, the receipt for the domain names, or the email Lawrence received in response to his request for information about ankle monitors.

## E.    Retroactive Change in Theft Statute

¶ 51    Lawrence's final argument concerns the retroactivity of an amendment to the theft statute. When Lawrence committed his crimes, it was a class 4 felony to steal something valued between $1000 and $20,000. § 18-4-401(2)(c), C.R.S. 2012. By the time of trial, however, the General Assembly had comprehensively amended the theft statute, reclassifying the theft offense based on the value of the item the defendant stole and the associated penalty. *See* Ch. 373, sec. 1, 2013 Colo. Sess. Laws 2195-97. After the amendment, stealing something valued at $1000 was a class 1 misdemeanor. § 18-4-401(2)(e), C.R.S. 2018.

¶ 52     The chart[4] below summarizes the amendment to the values in the theft statute by comparing the value of the item stolen with the level of offense under the old and amended statutory schemes.



---

[4] In both the pre- and post-amendment versions of the statute, the values for each category of theft are listed in section 18-4-401(2). *See* § 18-4-401(2)(b)-(j), C.R.S. 2018; § 18-4-401(2)(b)-(d), C.R.S. 2012.  For the purposes of this chart, F2 is a class 2 felony, F3 is a class 3 felony, F4 is a class 4 felony, F5 is a class 5 felony, F6 is a

¶ 53    At trial, the court applied the old version of the theft statute, instructing the jury that to convict Lawrence of theft, it must find that he stole an item valued at "one thousand dollars or more but less than twenty thousand dollars."  As a result, the jury necessarily found that Lawrence stole at least $1000 but no more than $20,000.  The jury, however, made no other finding related to the value of the money that Lawrence had stolen.

¶ 54    On appeal, both parties agree that, after *Stellabotte*, Lawrence's conviction for a class 4 felony cannot stand.  In *Stellabotte*, ¶ 3, our supreme court held that a defendant whose conviction is not final is entitled to the ameliorative benefit of a change in the theft statute.  As a result, the supreme court reclassified Stellabotte's conviction as if it had occurred under the amended theft statute, not the statute that was in place at the time of the crime, and remanded the case for resentencing.  *Id.*  We agree that, under *Stellabotte*, Lawrence cannot stand convicted of theft as a class 4 felony.

---

class 6 felony, M1 is a class 1 misdemeanor, M2 is a class 2 misdemeanor, M3 is a class 3 misdemeanor, and PO is a petty offense.  The box with the thick outline is the offense that Lawrence was convicted of at trial.

¶ 55    But *Stellabotte* did not reach the issue that we must resolve

here: If not a class 4 felony, then what level of offense should

Lawrence be convicted?  The defendant in *Stellabotte* was convicted

of theft for wrongfully towing cars and then retaining them.  *Id.* at ¶

5.  The opinion does not discuss the exact value of the cars that the

defendant stole, probably because it was not contested on appeal

that the total value was more than $5000 and less than $20,000.

*Id.* at ¶ 6.  And because no one contested that the value fell within

that range, the exact value wouldn't have made a difference once

the court decided that the defendant was entitled to relief under the

amended statute.[5]  In other words, to resolve the case, the supreme

court needed to decide only whether the defendant was entitled to

relief under the amended statute and not how far that relief

stretched.

¶ 56    Here, the amount of Lawrence's theft is disputed.  While the

evidence is sufficient to support a finding that he stole $9000, there

---

[5] And even if the value was disputable, on appeal to this court and
the supreme court, Stellabotte did not argue that he was entitled to
ameliorative relief beyond resentencing as a class 5 felony.  *See
People v. Stellabotte*, 2018 CO 66, ¶ 7; *People v. Stellabotte*, 2016
COA 106, ¶ 40, *aff'd*, 2018 CO 66.  So, even if Stellabotte could
have raised the issue that Lawrence raises here, he did not.

26

is conflicting evidence with respect to whether he used some of the money for legitimate business purposes, like registering the business, renting an office, and creating a website. Because the amount of the theft is disputed, we cannot simply reclassify Lawrence's crime under the new statute like the court was able to do in *Stellabotte*. Instead, we must determine what effect we should give to the jury's finding as to the value of the things stolen when the legal consequences that correspond to that finding have changed.

¶ 57 Lawrence contends that he can only stand convicted of a class 1 misdemeanor because we must accept the lowest value that the jury's finding supports. So, according to Lawrence, because the jury found that he stole an item with a value of at least $1000 but no more than $20,000, we must assume that the jury concluded that he stole an item valued at $1000, which under the amended statute is a class 1 misdemeanor. § 18-4-401(2)(e). The People, on the other hand, argue that we must view the evidence in the light most favorable to the prosecution, which in this case would support a conviction for theft of an item valued at $9000. Under the amended statute, theft of an item valued at $9000 is a class 5

27

felony. § 18-4-401(2)(g). But for the reasons explained below, we don't completely agree with either contention.

¶ 58    Everyone agrees that D.B. transferred $9000 by depositing it into Lawrence's personal bank account. What is in dispute, however, is the amount that he misappropriated. Given that the evidence as to value is in dispute, assigning a value of $9000 to Lawrence's theft would violate Lawrence's Sixth Amendment right to a jury trial by increasing the penalty of the theft beyond what is supported by a jury's finding. *See Blakely v. Washington*, 542 U.S. 296, 303 (2004) (a criminal penalty may be based only on facts found by a jury or admitted by the defendant). The People, relying on *People v. Patton*, 2016 COA 187, contend that entering a class 5 felony conviction would not offend Lawrence's Sixth Amendment right to a trial by jury. In that case, a division of this court entered a class 5 felony conviction under the amended theft statute even though the jury had applied the old version of the statute. *Patton*, ¶ 45. But in that case, the prosecution presented evidence establishing that Patton had stolen an item valued at approximately $8500, and Patton didn't contest this value. *Id.* at ¶ 40. The division relied on the fact that the evidence was undisputed and

uncontested to conclude that the conviction for a class 5 felony was based on facts that the jury necessarily found. *Id.* In other words, because the parties presented the jury with evidence of only one value, the court could be assured that the jury had accepted that value in rendering its guilty verdict. Here, the evidence is disputed, so *Patton* does not control our analysis.

¶ 59 But at the same time, Lawrence does not cite, and we have not found, any authority to support his argument that we must enter a conviction for theft as a class 1 misdemeanor when, as is the case here, the record contains sufficient evidence from which the jury could have convicted the defendant of theft as a class 5 felony.

¶ 60 Instead, we conclude that Lawrence is entitled to a new trial on the theft charge if the prosecution wishes to pursue a charge greater than a class 1 misdemeanor. In essence, by instructing the jury under the old statute, the trial court misinstructed the jury with respect to the value element of theft. We conclude that when a trial court's theft instruction misstates the value element, reversal is required if the evidence as to value is in dispute. *Cf. People v. Cowden*, 735 P.2d 199, 202 (Colo. 1987) (trial court's failure to instruct jury on the value element of theft was not plain error

because the value of the item that the defendant stole was not contested).  But that does not necessarily mean that Lawrence is entitled to a new trial on the theft charge.

¶ 61    If a jury instruction misstates the elements necessary to convict a defendant of a crime, but accurately states the elements of a lesser crime, the prosecutor may elect to retry the defendant for the greater crime or request that the court enter a conviction for the lesser crime.  *People v. Sepulveda*, 65 P.3d 1002, 1008 (Colo. 2003) (discussing prosecutorial discretion as to acceptance of conviction for a lesser offense); *People v. Manier*, 197 P.3d 254, 261 (Colo. App. 2008) (when a jury instruction uses the wrong mens rea to prove an aggravating circumstance, the prosecution may retry the defendant or request that a conviction enter for the non-aggravated version of the crime).  Here, the trial court's theft instruction accurately instructed the jury on the elements necessary to convict Lawrence of theft as a class 1 misdemeanor, and the jury found that he committed theft of an item with a value of at least $1000.

¶ 62    Accordingly, on remand, the prosecution may elect to have the theft conviction be entered as a class 1 misdemeanor, or, if it

wishes to pursue a felony theft conviction, Lawrence is entitled to a new trial on that charge.

## III. Conclusion

¶ 63 Lawrence's convictions for securities fraud are affirmed. His conviction for theft, however, is reversed, and the case is remanded to the trial court. On remand, the prosecution may elect to retry Lawrence for theft or request that the trial court enter a conviction and resentence Lawrence for class 1 misdemeanor theft based on the jury's finding that he stole an item of at least $1000.

JUDGE FOX and JUDGE FREYRE concur.