The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 12, 2020

## 2020COA162

**No. 20CA0856, *Peo v Gregory* — Criminal Law — Sentencing — Amendatory Statutes — Retroactive Application; Crimes — Unauthorized Absence**

A division of the court of appeals considers for the first time whether a provision of the 2020 Prison Population Reduction and Management Act — the language of the Act creating the crime of "unauthorized absence" — applies retroactively. The division concludes that the unauthorized absence provision applies retroactively, following the supreme court's reasoning in *People v. Stellabotte*, 2018 CO 66, 421 P.3d 174.

COLORADO COURT OF APPEALS 2020COA162

Court of Appeals No. 20CA0856
Mesa County District Court No. 19CR2080
Honorable Richard T. Gurley, Judge

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Jesse Gregory,

Defendant-Appellee.

ORDER AFFIRMED

Division VII
Opinion by JUDGE LIPINSKY
Navarro and Tow, JJ., concur

Announced November 12, 2020

Daniel P. Rubenstein, District Attorney, Kraig R. Hamit, Deputy District
Attorney, Grand Junction, Colorado, for Plaintiff-Appellant

Megan A. Ring, Colorado State Public Defender, Jeffrey A. Wermer, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellee

¶ 1    On March 6, 2020, Governor Jared Polis signed into law a bill that, among other provisions, substantially reduced the penalty for a person's unauthorized removal of an electronic monitoring device while on parole in an intensive supervision program (ISP parole). Under House Bill 20-1019, the Prison Population Reduction and Management Act (the Prison Reduction Act), the unauthorized removal of an electronic monitoring device while on ISP parole no longer constitutes felony escape, with a sentencing range of four to twelve years in prison.  Rather, the Prison Reduction Act provides that a person on ISP parole who removes an electronic monitoring device "without permission and with the intent to avoid arrest, prosecution, monitoring or other legal process" commits the new crime of "unauthorized absence."  Ch. 9, sec. 10, § 18-8-208.2(1)(b), 2020 Colo. Sess. Laws 27-28.

¶ 2    Unauthorized absence is a class 3 misdemeanor with a maximum sentence of six months in county jail, unless the person is serving a sentence for certain offenses, which the parties stipulated do not apply here.  *Id.* § 18-8-208.2(2)(b), 2020 Colo. Sess. Laws at 27-28.  (A person convicted of unauthorized absence while serving a sentence for one of those listed offenses commits a

1

class 6 felony. *Id.* § 18-8-208.2(1)(a), 2020 Colo. Sess. Laws at 27-28.)

¶ 3     Defendant, Jesse Gregory, allegedly removed his electronic monitoring device without authorization while on ISP parole. Gregory faced prosecution for felony escape on the date the governor signed the Prison Reduction Act into law.

¶ 4     It makes a significant difference whether a defendant is charged with felony escape or the new crime of unauthorized absence — even more so in this case, because, together with the escape count, the prosecution charged Gregory with habitual criminal sentencing enhancers and sought a forty-eight-year sentence. Thus, for Gregory, retroactive application of the unauthorized absence provision of the Prison Reduction Act means the difference between a prison sentence of forty-eight years and a maximum jail sentence of six months.

¶ 5     The district court agreed with Gregory that the new crime of unauthorized absence applied to him and dismissed the felony escape and habitual criminal charges. The court remanded the case to county court for further proceedings as a misdemeanor unauthorized absence case. The prosecution appealed.

¶ 6    We agree with the district court that the unauthorized absence provision applies retroactively to cases being prosecuted as of the effective date of the new statute, and thus applies to Gregory.

## I.    Background

### A.    The Prison Reduction Act

¶ 7    The Prison Reduction Act amended, among other statutes, section 18-8-208(11), C.R.S. 2019, to state that, "[i]f a person . . . is participating in a[n] . . . intensive supervision program . . . then the person is not in custody or confinement" for purposes of the escape statute. Ch. 9, sec. 8, § 18-8-208(11), 2020 Colo. Sess. Laws 26-27. Before the enactment of the Prison Reduction Act, a person on ISP parole was deemed to be "in custody or confinement" for purposes of the escape statute. *See* § 17-27.5-104(1), C.R.S. 2019 ("If an offender . . . knowingly removes or tampers with an electronic monitoring device that he or she is required to wear as a condition of parole, he or she shall be deemed to have escaped from custody and shall, upon conviction thereof, be punished as provided in section 18-8-208, C.R.S."); § 18-8-208(2) ("A person commits a class 3 felony if, while being in custody or confinement following

3

conviction of a felony other than a class 1 or class 2 felony, he knowingly escapes from said custody or confinement.").

¶ 8 The Prison Reduction Act defines the crime of authorized absence as "knowingly . . . [r]emov[ing] or tamper[ing] with an electronic monitoring device required by the supervising agency to be worn by the person in order to monitor his or her location, without permission and with the intent to avoid arrest, prosecution, monitoring or other legal process." Ch. 9, sec. 9, § 18-8-208.2(1)(b), 2020 Colo. Sess. Laws 27-28. (We note that the Prison Reduction Act did not amend section 17-27.5-104(1), which arguably still defines Gregory's conduct as felony escape. However, because neither party asked us to consider the apparent inconsistency between amended sections 18-8-208(11) and 18-8-208.2(1)(b) and section 17-27.5-104(1), that issue is not properly before us and we do not consider it.)

¶ 9 Because, under the amended version of section 18-8-208(11), a person on ISP parole is not considered to be "in custody or confinement," such a person who removes an electronic monitoring device without permission to avoid monitoring commits the crime of unauthorized absence, and not felony escape. *Id.*

## B.    The Charges Filed Against Gregory

¶ 10    The prosecution alleges that, while Gregory was on ISP parole, he removed his electronic monitoring device and left his residence of record without permission.  According to the prosecution, law enforcement authorities could not find Gregory for fifteen months.  Once the authorities located Gregory, he was arrested and charged with felony escape and habitual criminal sentencing enhancers.

¶ 11    Governor Polis signed the Prison Reduction Act into law after Gregory allegedly removed his electronic monitoring device and while Gregory's felony escape charge was pending.

¶ 12    Gregory moved to dismiss the felony escape charge and to remand the case to county court for further proceedings on a misdemeanor unauthorized absence charge.  He argued that the General Assembly's reclassification of his alleged conduct applies retroactively.

¶ 13    The prosecution opposed the motion, asserting that, although Gregory's conduct, "if committed after [the enactment of the Prison Reduction Act], [would] constitute the crime of 'unauthorized absence,'" the unauthorized absence provision does not apply retroactively because the General Assembly created a new criminal

5

offense instead of reducing the penalties associated with an existing offense. The prosecution argued that *People v. Stellabotte*, 2018 CO 66, ¶ 3, 421 P.3d 174, 175, which addressed the retroactivity of "ameliorative, amendatory legislation," applies only when the General Assembly reduces the sentencing range of or reclassifies an existing offense and not when the General Assembly creates a new offense.

¶ 14    The district court disagreed with the prosecution's narrow reading of *Stellabotte* and found that the unauthorized absence provision applies retroactively to Gregory. The court remanded Gregory's case to county court for further proceedings as a misdemeanor unauthorized absence charge. Further, "because [Gregory could] no longer be charged with a felony," the court dismissed the habitual criminal counts. The prosecution filed this interlocutory appeal.

## II.    Discussion

### A.    Standard of Review

¶ 15    We review de novo a district court's decision to grant a defense motion to dismiss criminal charges, which presents a question of law. *People v. Alameno*, 193 P.3d 830, 834 (Colo. 2008); *People v.*

6

*Collins*, 32 P.3d 636, 638 (Colo. App. 2001). This case also "involves questions of statutory interpretation, which we review de novo." *Stellabotte*, ¶ 10, 421 P.3d at 176.

### B. The Law Governing the Retroactive Application of Criminal Statutes

¶ 16     Sections 2-4-202 and 2-4-303, C.R.S. 2020, create a general presumption that statutes apply prospectively. Section 18-1-410(1)(f)(I), C.R.S. 2020, a section of the Criminal Code, however, provides that a defendant may be entitled to relief if "there has been significant change in the law, applied to the applicant's conviction or sentence, allowing in the interests of justice retroactive application of the changed legal standard." Under section 18-1-410(1)(f)(II), an applicant may obtain relief on these grounds unless the applicant "has not sought appeal of a conviction within the time prescribed therefor or if a judgment of conviction has been affirmed upon appeal."

¶ 17     Relying on the identically worded predecessor of section 18-1-410(1)(f), our supreme court held in *People v. Thomas* that the defendant was entitled to retroactive application of amendatory legislation that lowered the degree of, and thus the maximum

7

penalty for, the charged offense. 185 Colo. 395, 397-98, 525 P.2d 1136, 1137-38 (1974). The defendant in *Thomas* was charged with attempted burglary. After the defendant's arrest, but before his case went to trial, the General Assembly lowered the degree of, and thus the maximum penalty for, attempted second degree burglary. *Id.* at 396-97, 525 P.2d at 1137; *see* Ch. 121, sec. 1, §§ 40-2–101(5), 40-4-203, 1971 Colo. Sess. Laws 414-15, 427. In addition, following the defendant's conviction, and while his case was on appeal, the General Assembly amended the savings clause of the criminal code to allow for retroactive application of criminal statutes. *See* Ch. 152, sec. 2, § 40-1-510(1)(f), 1973 Colo. Sess. Laws 533.

¶ 18 The *Thomas* court explained that retroactive application of a criminal statute "is especially appropriate where [the] change in the law reducing the sentence intervenes before conviction is had and sentence is imposed . . . ." *Thomas*, 185 Colo. at 397-98, 525 P.2d at 1138. Further, the *Thomas* court noted that "[t]he view that amendatory legislation mitigating the penalties for crimes should be applied to any case which has not received final judgment finds substantial support in the common law." *Id.* at 398, 525 P.2d at

8

1138.  Thus, *Thomas* teaches that application of section 18-1-410(1)(f)(I) is not limited to cases in which the defendant has been convicted and sentenced.

¶ 19    Two years ago, the supreme court reaffirmed the holding of *Thomas* in a case involving facts similar to those presented here. *See Stellabotte*, ¶¶ 5-6, 421 P.3d at 176.  The defendant in *Stellabotte* was charged with felony theft of items valued between $5,000 to $20,000.  Between the date of the alleged theft and Stellabotte's trial, the General Assembly lowered the classification of theft for items valued between $5,000 to $20,000.  *Id.*

¶ 20    Although the General Assembly amended the theft statute before Stellabotte's trial, neither the prosecution nor Stellabotte brought the amendment to the trial court's attention before the trial.  *Id.* at ¶ 7, 421 P.3d at 176.  Because the trial court was unaware of the amendment, following Stellabotte's conviction, the trial court sentenced him under the earlier version of the theft statute.  *Id.*

¶ 21    The supreme court applied section 18-1-410(1)(f)(I) in determining that the amendment to the theft statute applied retroactively to Stellabotte.  *Stellabotte,* ¶ 38, 421 P.3d at 181-82.

9

The *Stellabotte* court reaffirmed the rule announced in *Thomas* that "amendatory legislation mitigating the penalties for crimes should be applied to any case which has not yet received final judgment." *Id.* at ¶ 16, 421 P.3d at 177 (quoting *Thomas*, 185 Colo. at 398, 525 P.2d at 1138).

¶ 22    The *Stellabotte* court further clarified that the *Thomas* retroactivity rule applies "unless the amendment contains language indicating it applies only prospectively." *Id.* at ¶ 3, 421 P.3d at 175. In so ruling, the court expressly disavowed as dicta its statements in *People v. Macias*, 631 P.2d 584 (Colo. 1981); *People v. McCoy*, 764 P.2d 1171 (Colo. 1988); and *Riley v. People*, 828 P.2d 254 (Colo. 1992), suggesting that courts may give retroactive effect only to those criminal statutes that expressly apply retroactively. *Stellabotte*, ¶¶ 28-29, 38, 421 P.3d at 179-80, 182.

¶ 23    The court explained that, because the statutes at issue in *Macias*, *McCoy*, and *Riley* expressly provided for prospective application only, the court's "statements in those cases about the legislature's need to clearly indicate its intent for retroactive application were 'not necessary to the decisions in those cases'" and were therefore dicta. *Id.* at ¶ 28, 421 P.3d at 179-80 (quoting *Town*

10

*of Eagle v. Scheibe*, 10 P.3d 648, 652 (Colo. 2000)).  For this reason, the court concluded, the statements in *Macias*, *McCoy*, and *Riley* do not control in cases involving statutes that do not expressly provide for prospective application, such as the amendment to the theft statute at issue in *Stellabotte*.  *Id.*

¶ 24    The court noted that the amendment to the theft statute was silent on whether it applied prospectively only or retroactively.  *Id.* at ¶ 11, 421 P.3d at 177.  While acknowledging the general presumption of prospective application found in sections 2-4-202 and 2-4-303, the court held that "well-established principles of statutory interpretation" require the adoption of "a construction that avoids or resolves potential conflicts, giving effect to all legislative acts," such as section 18-1-410(1)(f)(I).  *Id.* at ¶ 32, 421 P.3d at 180 (quoting *Huber v. Colo. Mining Ass'n*, 264 P.3d 884, 892 (Colo. 2011)).

¶ 25    If conflicting statutes cannot be reconciled, "a specific statutory provision 'acts as an exception to [a] general provision, carving out a special niche from the general rules to accommodate a specific circumstance.'"  *Id.* (quoting *Martin v. People*, 27 P.3d 846, 851 (Colo. 2001)).  Because section 18-1-410(1)(f)(I) "is a more

11

specific provision than the broad presumptions of prospective application" of sections 2-4-202 and 2-4-303, the *Stellabotte* court concluded that section 18-1-410(1)(f)(I) prevailed as an exception to the general rule of prospectivity. *Id.* at ¶ 33, 421 P.3d at 181.

¶ 26 The *Stellabotte* court stressed the limited time period in a criminal case in which section 18-1-410(1)(f)(I) relief is available. Section 18-1-410(1)(f)(II) limits retroactive application of ameliorative, amendatory criminal statutes to the time "before the conviction is final." *Id.* at ¶ 33, 421 P.3d at 181.

¶ 27 Under the broad language of *Thomas* and *Stellabotte*, amendatory legislation applies both before and after the defendant's conviction and sentencing, so long as the defendant's conviction has not become final. The supreme court's language can be read only one way: the trial court should have applied the amendatory legislation during Stellabotte's trial and sentencing. Thus, the *Stellabotte* analysis applies to cases where, as here, the General Assembly enacted amendatory legislation between the date of the alleged offense and the defendant's trial.

¶ 28 Moreover, there is no logical reason why amendatory legislation should apply only after a conviction, but not to a pending

12

prosecution that has not yet gone to trial. A rule limiting *Stellabotte* to cases where the defendant has already been convicted not only cannot be squared with *Stellabotte*'s broad holding but makes no sense in practice. Following the enactment of amendatory legislation, a trial court should not be required to apply the old version of the statute at trial, knowing full well that, immediately following the trial, the trial court will need to set aside the conviction and sentence and order a new trial or sentencing proceeding.

¶ 29    Having determined that *Thomas* and *Stellabotte* apply even to pending charges where the General Assembly enacted amendatory legislation between the date of the defendant's alleged criminal conduct and the trial, we turn to whether the three requirements of *Stellabotte* require retroactive application of the Prison Reduction Act to Gregory's case: (1) the amendment must be ameliorative; (2) the amendment must not state that it only applies prospectively; and (3) the defendant's conviction must not yet be final. *Id.* at ¶ 38, 421 P.3d at 182.

## C.    Application

### 1.    The District Court Did Not Err by Finding that the Unauthorized Absence Provision Satisfies the First Prong of the *Stellabotte* Test

¶ 30    In determining whether the unauthorized absence provision satisfies the first prong of *Stellabotte,* we consider two questions: first, whether the unauthorized absence provision is "ameliorative" and, second, whether the *Stellabotte* analysis applies to legislation that creates a new offense.  We answer both questions in the affirmative.

### a.    The Unauthorized Absence Provision Is the Type of Legislation that *Thomas* and *Stellabotte* Characterized as Ameliorative

¶ 31    The district court reasoned that, because "the newly created offense of unauthorized absence exposes [Gregory] to a much lower sentence range than he would otherwise face if charged under the escape statute," the unauthorized absence provision fits "squarely within the type of ameliorative amendments that apply retroactively under *Thomas* and *Stellabotte.*"

¶ 32    But what does "ameliorative" mean for purposes of the *Thomas* and *Stellabotte* analysis?

¶ 33    The *Thomas* court neither used nor defined "ameliorative."

185 Colo. at 398, 525 P.2d at 1138.  *Stellabotte* also did not define

"ameliorative," although the *Stellabotte* court provided an example

of "ameliorative" legislation — an amendment that "mitigates

penalties for crimes."  *Stellabotte*, ¶ 17, 421 P.3d at 178 (quoting

*People v. Thornton*, 187 Colo. 202, 203, 529 P.2d 628, 628 (1974)).

¶ 34    *People v. Bloom*, 195 Colo. 246, 577 P.2d 288

(1978), *superseded by statute as stated in People v. Lucero*, 2016

COA 105, 381 P.3d 436, provides another example of ameliorative

legislation, although it, too, does not define "ameliorative."  The

*Bloom* court held the defendant was entitled to the "ameliorative

benefits" of amendments to the state's drug laws that reduced the

sentencing range for possession of cannabis.  *See Bloom*, 195 Colo.

at 251-52, 577 P.2d at 292.

¶ 35    In addition, *People v. Godinez*, 2018 COA 170M, 457 P.3d 77,

provided examples of ameliorative amendments and explained when

an amendment is *not* ameliorative.  In that case, a division of this

court noted that *Stellabotte* applies to statutes that "either

decrease[] the severity of a previously defined crime or reduce[] the

15

maximum sentence that could be imposed for the commission of that crime." *Id.* at ¶ 29, 457 P.3d at 85.

¶ 36    *Godinez* concerned amendments to a jurisdictional statute that the division concluded did not apply retroactively. The amendments did not "reduce the severity or sentences for any of the crimes of which Godinez was convicted." *Id.* at ¶ 30, 457 P.3d at 85. Rather, the amendment concerned "the procedure by which jurisdiction is apportioned between the district courts and the juvenile courts . . . [an issue] fundamentally of a different nature" than those addressed in *Stellabotte* and its antecedents. *Id.* at ¶ 29, 457 P.3d at 85.

¶ 37    Following the examples of ameliorative and nonameliorative statutes in these cases, the unauthorized absence provision is ameliorative because it mitigates the penalty for Gregory's alleged conduct. Recall that, before the enactment of the Prison Reduction Act, Gregory's alleged conduct was classified as felony escape presumptively punishable by a four- to twelve-year prison sentence. § 18-1.3-401(1)(a)(V)(A.1), C.R.S. 2019. The Prison Reform Act reclassified the identical conduct as a misdemeanor punishable by a maximum sentence of six months in jail (unless the person is

serving a sentence for certain offenses, which, as noted above, the parties stipulated do not apply here).  § 18-1.3-501(1)(a), C.R.S. 2020; Ch. 9, sec. 10, § 18-8-208.2(1)(b), 2020 Colo. Sess. Laws 27-28.

¶ 38     Thus, the unauthorized absence provision mitigates the penalty for unauthorized removal of an electronic monitoring device while on ISP parole — it reduces Gregory's possible punishment. For these reasons, it constitutes the type of ameliorative, amendatory legislation that, according to *Stellabotte*, applies retroactively under section 18-1-410(1)(f)(I), so long as the second and third prongs of *Stellabotte* are also satisfied.

¶ 39     But our analysis of the first prong of *Stellabotte* does not stop here.  We must also address the prosecution's argument that the unauthorized absence provision does not apply retroactively, even if it is ameliorative under *Stellabotte*, because it created a new offense.

b.      *Stellabotte* Applies to Ameliorative Amendments that Create a New Offense

¶ 40     The prosecution contends that the unauthorized absence provision "is not the type of ameliorative legislation that was applied

17

in *Stellabotte* because it does not merely reduce the sentencing range for escape, but instead creates an entirely new offense with different elements." Under the prosecution's reasoning, *Thomas*, *Stellabotte*, and section 18-1-410(1)(f) apply only to statutes that reduce the sentencing range for an offense; they do not apply when the General Assembly creates a new offense.

¶ 41 Like the district court, we reject the prosecution's narrow reading of *Thomas*, *Stellabotte*, and section 18-1-410(1)(f). By its terms, section 18-1-410(1)(f) applies to any "significant change in the law" that "applied to the applicant's conviction or sentence, allowing in the interests of justice retroactive application of the changed legal standard." The statute is not limited to "significant change[s] in the law" that take the form of reducing the sentencing range for an offense. *See* § 18-1-410(1)(f). In applying section 18-1-410(1)(f), *Thomas* and *Stellabotte* did not create such a distinction. Thus, regardless of whether the General Assembly reduces a penalty by creating a new offense or by modifying an existing offense, such an amendment applies retroactively for the benefit of a defendant whose case has not yet resulted in a final conviction, so

long as the legislation by its terms does not apply prospectively only.

¶ 42 We agree with Gregory that *Bloom* and *Glazier v. People*, 193 Colo. 268, 565 P.2d 935 (1977), provide further support for retroactive application of the unauthorized absence provision. In *Bloom*, the division explained how the General Assembly had mitigated the penalties for possession of cannabis by creating a new offense. Ch. 115, sec. 6, § 12-22-404(1), 1975 Colo. Sess. Laws 435; *see Bloom*, 195 Colo. at 251-52, 577 P.3d at 292. Through the 1975 cannabis legislation, the General Assembly reclassified the possession of cannabis from a felony to a misdemeanor and lowered the applicable sentencing range. *Bloom*, 195 Colo. at 251, 577 P.3d at 292. Based on the reasoning of *Thomas*, the *Bloom* court held that the amendment to the cannabis statute applied retroactively because it was "amendatory legislation which mitigates the penalty for a crime." *Id.*

¶ 43 Similarly, based on *Thomas*, the supreme court held in *Glazier* that a defendant who was convicted of possessing more than one-half ounce of cannabis was also entitled to be sentenced under

19

the 1975 amendment, as it reduced the penalty for the defendant's conduct. *See Glazier*, 193 Colo. at 268, 565 P.2d at 935.

¶ 44     Like the unauthorized absence provision, the legislation at issue in *Bloom* and *Glazier* created a new offense — which did not exist at the time of the defendants' arrest — but which covered conduct that had previously fallen under a different criminal offense with a more severe sanction. Both *Bloom* and *Glazier* held that this type of legislation applies retroactively. *Bloom,* 195 Colo. at 251-52, 577 P.2d at 292; *Glazier,* 193 Colo. at 269, 565 P.2d at 936.

¶ 45     Also like the unauthorized absence provision, the legislation at issue in *Bloom* and *Glazier* lowered the severity of, and reduced the sentencing range for, the offense with which the defendant was charged. *See Bloom*, 195 Colo. at 251-252, 577 P.2d at 292; *Glazier,* 193 Colo. at 269, 565 P.2d 936. Moreover, the means by which the General Assembly ameliorated the punishment for possession of cannabis in *Bloom* and *Glazier* — creation of a new offense — is the same means by which, through the Prison Reduction Act, the General Assembly ameliorated the punishment for unauthorized removal of an electronic monitoring device while

20

on ISP parole.  *See Bloom,* 195 Colo. at 251-252, 577 P.2d at 292; *Glazier,* 193 Colo. at 269, 565 P.2d 936.

¶ 46    Thus, the prosecution's contention that "ameliorative legislation" refers exclusively to amendments that reduce the sentence for an existing offense, and not to amendments that create a new offense, draws a distinction that lacks support in section 18-1-410(1)(f), *Thomas,* or *Stellabotte.*

¶ 47    For this reason, we hold that, under the first prong of *Stellabotte,* the unauthorized absence provision applies to Gregory, even though the General Assembly accomplished its goal by creating a new offense.

2.    Because the Prison Reduction Act Does Not State that It Only Applies Prospectively, the Unauthorized Absence Provision Satisfies the Second Prong of *Stellabotte*

¶ 48    As explained above in Part II.B., the *Stellabotte* court held that an ameliorative statutory amendment applies retroactively "unless the amendment contains language indicating it applies only prospectively."  *Stellabotte,* ¶ 3, 421 P.3d at 175.  Thus, the second prong of the *Stellabotte* test focuses on whether the amendment expressly applies prospectively only.

21

¶ 49    As the district court explained, the Prison Reduction Act is silent on whether "the [unauthorized absence provision] may only be applied prospectively." *See People v. Hamm*, 2019 COA 90, ¶ 35, 461 P.3d 559, 565 (holding that a statute that expressly applies "on or after" a specified date has prospective effect only). The absence of prospective application language from the Prison Reduction Act is significant. *See Wilkinson v. Wilkinson*, 41 Colo. App. 364, 365, 585 P.2d 599, 600 (1978).

¶ 50    Because the Prison Reduction Act does not specify that the unauthorized absence provision only applies prospectively, the provision satisfies the second prong of *Stellabotte*.

### 3.    Because No Final Judgment of Conviction Has Entered Against Gregory, the Third Prong of *Stellabotte* Is Satisfied

¶ 51    As explained above, retroactivity under *Thomas*, *Stellabotte*, and section 18-1-410(1)(f)(I) is only available to applicants who do not have a final conviction. § 18-1-410(1)(f)(II); *Stellabotte*, ¶ 3, 421 P.3d at 175; *Thomas*, 185 Colo. at 397, 525 P.3d at 1137. No conviction, whether final or not, has entered in Gregory's case. For this reason, the third prong of *Stellabotte* is satisfied.

22

¶ 52    Because the application of the unauthorized absence provision in this case meets all three of the *Stellabotte* requirements for retroactivity, we must apply it retroactively to Gregory.

D.    The Prosecution's Remaining Contentions Are Not Convincing

¶ 53    The prosecution presents three additional arguments that we conclude are not convincing.

¶ 54    First, the prosecution contends that retroactive application of the unauthorized absence provision would create "some constitutional peculiarities." But the prosecution does not explain the nature of these "peculiarities." The prosecution concedes that retroactive application of the unauthorized absence provision "would not likely constitute an unconstitutional ex post facto law because it decreases rather than increases punishment."

¶ 55    The prosecution's "peculiarities" argument is at best underdeveloped and, for that reason, we do not address it on the merits. *See Sanchez v. Indus. Claim Appeals Office*, 2017 COA 71, ¶ 41, 411 P.3d 245, 255.

¶ 56    Second, the prosecution contends that this court should decline to apply the unauthorized absence provision to Gregory because the supreme court is currently considering whether a

defendant "who is entitled to the ameliorative benefit of . . . amendments to the theft statute" is also entitled to "entry of a conviction for the degree of theft supported by the jury's verdict, or whether he should be subjected to a new theft trial." *Lawrence v. People*, No. 19SC556, 2020 WL 291171, at *1 (Colo. Jan. 21, 2020) (unpublished order).

¶ 57 But the pendency of an issue in the supreme court does not preclude us from addressing it or a similar issue. *See People v. Viburg*, 2020 COA 8M, ¶ 1 n.1, ___ P.3d ___, ___ n.1.

¶ 58 Third, citing *People v. Boyd*, 2017 CO 2, 387 P.3d 755, the prosecution asserts that, because the General Assembly did not decriminalize interference with ISP parole monitoring, retroactive application of the unauthorized absence provision would "deprive the People of the power to prosecute escapes."

¶ 59 But *Boyd* is inapposite. In that case, the supreme court did not address retroactivity under section 18-1-410(1)(f). *See id.* at ¶¶ 5-10, 387 P.3d at 757-58. Rather, the *Boyd* court addressed whether a constitutional amendment legalizing the possession of less than one ounce of marijuana deprived the state of the power to continue to prosecute appeals involving possession of such quantity

24

of marijuana. *See id.* at ¶ 8, 387 P.3d at 757. The court concluded that the amendment barred the state from continuing to prosecute such appeals in those cases where the defendant had a pending right to appeal at the time the amendment became effective. *Id.* at ¶ 10, 387 P.3d at 757.

¶ 60 The amendment at issue in *Boyd* did not merely reduce the penalty for possessing small quantities of marijuana; it legalized that conduct. In contrast, the Prison Reduction Act did not legalize the removal of an electronic monitoring device without authorization with the intent to avoid monitoring. Such conduct remains a crime. It is simply a different crime, with a lesser penalty, from the crime applicable before enactment of the Prison Reduction Act. As explained above, under *Stellabotte*, ameliorative, amendatory legislation that reduces the penalty for criminal conduct applies during the pendency of a criminal case.

¶ 61 For this reason, in creating the new offense of unauthorized absence, the General Assembly did not preclude the prosecution from holding Gregory accountable. He still faces a possible jail sentence for allegedly removing his electronic monitoring device without authorization, even though he can no longer be prosecuted

for felony escape. The prosecution can prosecute Gregory for the misdemeanor offense of unauthorized absence.

¶ 62    Lastly, we note that the unauthorized absence provision does not constitute unconstitutional retrospective legislation. "Retrospective" legislation violates the constitution because it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Abromelt v. Denver Career Serv. Bd.*, 140 P.3d 44, 51 (Colo. App. 2005). *See also* Colo. Const. art. 2, § 11 (barring legislation that is "retrospective in its operation"). "Because some retroactively applied legislation is constitutional while some is not, Colorado courts use the term 'retrospective' to describe a statute whose retroactive application is unconstitutional." *Whiting Oil & Gas Corp. v. Atl. Richfield Co.*, 321 P.3d 500, 507 (Colo. App. 2010), *aff'd on other grounds*, 2014 CO 16, 320 P.3d 1179. "[R]etroactive application of a statute . . . is not necessarily unconstitutional." *Mesa Cnty. Land Conservancy, Inc. v. Allen*, 2012 COA 95, ¶ 7, 318 P.3d 46, 50. Because the unauthorized absence provision applies to conduct that was already illegal at the

time Gregory engaged in it, the unauthorized absence provision is not unconstitutional retrospective legislation.

## III.   Conclusion

¶ 63   The order is affirmed.

JUDGE NAVARRO and JUDGE TOW concur.