The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
January 28, 2021

## 2021COA9

**No. 20CA1116, *People v. Pennington* — Crimes — Unauthorized
Absence; Criminal Law — Sentencing — Amendatory Statutes
— Retroactive Application; Colorado Constitution — Article III
— Separation of Powers**

A division of the court of appeals agrees with *People v.
Gregory*, 2020 COA 162, and concludes that the unauthorized
absence provision of the 2020 Prison Population Reduction and
Management Act (PPRMA) applies retroactively. The division also
concludes that the district court infringed on the separation of
powers doctrine when it sua sponte amended the defendant's
criminal charge.

The special concurrence reaches the same result but
questions whether the supreme court's reasoning in *People v.
Stellabotte*, 2018 CO 66, directs retroactive application of

ameliorative legislation changing the elements of an existing offense and simultaneously creating a new crime.

The partial dissent would affirm the judgment of the district court in its entirety, concluding that the district court had the authority to amend the defendant's criminal charge.

COLORADO COURT OF APPEALS                                    **2021COA9**

---

Court of Appeals No. 20CA1116
Larimer County District Court No. 20CR444
Honorable Susan Blanco, Judge

---

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Emily Marie Pennington,

Defendant-Appellee.

---

ORDER AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE TERRY
Richman, J., specially concurs
Martinez*, J., concurs in part and dissents in part

Announced January 28, 2021

---

Clifford E. Riedel, District Attorney, Erin E. Butler, Deputy District Attorney,
David P. Vandenberg, Second Assistant District Attorney, Fort Collins,
Colorado, for Plaintiff-Appellant

Megan A. Ring, Colorado State Public Defender, Jeffrey A. Wermer, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellee


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2020.

¶ 1     This appeal involves a new twist on the issue decided in *People v. Gregory*, 2020 COA 162.  There, a division of this court held that newly amended section 18-8-208(11), C.R.S. 2020, which originated as part of the Prison Population Reduction and Management Act (the Prison Reduction Act), H.B. 20-1019, 72d Gen. Assemb., 2d Reg. Sess., 2020 Colo. Sess. Laws 23, applies retroactively to cases being prosecuted as of the effective date of the new statute.

¶ 2     In this case, the prosecution appeals the district court's order of June 19, 2020, that sua sponte amended the charge against defendant, Emily Marie Pennington, from felony escape under section 18-8-208, C.R.S. 2019, to a charge of unauthorized absence under a provision of the Prison Reduction Act, section 18-8-208.2, C.R.S. 2020, and effectively dismissed the escape charge. According to the prosecution, the court's order violated the separation of governmental powers and improperly applied the 2020 statute retroactively to Pennington.

¶ 3     We conclude that the district court did not err by retroactively applying H.B. 20-1019 to Pennington.  But we conclude that the district court *did* err by amending Pennington's charge to a charge

under the 2020 statute, because that action violated the separation of powers.

¶ 4     As a result, we affirm the court's order dismissing the escape charge against Pennington, but we reverse the court's amendment of the charge to one under the 2020 statute, and remand for further proceedings.

## I.     Background

¶ 5     Pennington was sentenced to concurrent terms in Larimer County Community Corrections for two drug felonies. According to the prosecution, on February 14, 2020, Pennington left the Community Corrections facility and never returned. Pennington was later arrested in April and charged with escape, a class 3 felony.

¶ 6     While Pennington was still at large, on March 6, 2020, Governor Jared Polis signed H.B. 20-1019 into law. As relevant here, the enactment redefined felony escape so that the act of leaving and failing to return to a community corrections facility is no longer an escape and instead constitutes the new misdemeanor offense of unauthorized absence. § 18-8-208(11), C.R.S. 2020; § 18-8-208.2, C.R.S. 2020.

¶ 7     After her arrest, Pennington moved to dismiss the felony escape charge, arguing that she was entitled to retroactive application of the Prison Reduction Act and that consequently she could only be charged with unauthorized absence.  Though the district court denied dismissal of the case, it ruled that H.B. 20-1019 should be applied retroactively, and as a result, the court amended the escape charge to a charge of unauthorized absence under the 2020 statute.

## II.     Retroactive Application of H.B. 20-1019

¶ 8     The prosecution argues that the district court erred by applying H.B. 20-1019 retroactively.  We disagree.

### A.     Legal Standards for Retroactive Application

¶ 9     Statutes are generally presumed to operate prospectively.  § 2-4-202, C.R.S. 2020; *see also* § 2-4-303, C.R.S. 2020 ("The [amendment] of any statute or part of a statute . . . shall not have the effect to release, extinguish, alter, modify, or change . . . any penalty, forfeiture, or liability . . . which shall have been incurred under such statute, unless the repealing, revising, amending, or consolidating act so expressly provides . . . .").  But if a statute is silent as to whether it applies only prospectively, a defendant may

3

seek retroactive application if she benefits from a significant change in the law. *People v. Stellabotte*, 2018 CO 66, ¶ 3.

¶ 10 In *Stellabotte*, our supreme court held that "ameliorative, amendatory legislation applies retroactively to non-final convictions under section 18-1-410(1)(f), unless the amendment contains language indicating it applies only prospectively." *Id.*; *see also* § 18-1-410(1)(f)(I), C.R.S. 2020 (a defendant may request postconviction relief if "there has been significant change in the law, applied to the applicant's conviction or sentence, allowing in the interests of justice retroactive application of the changed legal standard"). *Stellabotte* also reaffirmed a long line of cases that retroactively applied legislative changes when a criminal defendant stood to benefit from those amendments. *Stellabotte*, ¶ 26; *see, e.g., Glazier v. People*, 193 Colo. 268, 269, 565 P.2d 935, 936 (1977) ("As we have repeatedly held, a defendant is entitled to the benefits of amendatory legislation when relief is sought before finality has attached to the judgment of conviction."); *People v. Thomas*, 185 Colo. 395, 398, 525 P.2d 1136, 1138 (1974) (the district court erred by failing to retroactively apply a legislative change that mitigated the penalties for attempted burglary).

¶ 11     However, in cases where a legislative amendment has substantially changed the elements or definition of a crime, Colorado courts have held that such legislation does not apply retroactively. *See People v. Marlott*, 191 Colo. 304, 308-09, 552 P.2d 491, 494 (1976) (refusing to retroactively apply an amended definition of assault because the elements of the offense had been substantially changed from those in the statute under which the defendant had originally been charged); *People v. Ellis*, 41 Colo. App. 271, 274, 589 P.2d 494, 496 (1978) (refusing to retroactively apply an amended homicide statute because the new statute was considerably altered from the statute under which the defendant was originally charged).

## B.     Discussion

¶ 12     We conclude that the legislative changes in H.B. 20-1019 should be applied retroactively to Pennington's case. The parties agree, as do we, that H.B. 20-1019 does not contain language indicating that it applies only prospectively. *See Stellabotte*, ¶ 3 (legislation does not apply retroactively if the legislation says that it applies only prospectively); *see also Gregory*, ¶ 50 (H.B. 20-1019 does not specify that the unauthorized absence provision only

applies prospectively). We further conclude that because H.B. 20-1019's legislative changes are plainly ameliorative in nature, Pennington is entitled to the benefit of those changes.

¶ 13 Before the General Assembly enacted H.B. 20-1019, leaving and failing to return to a community corrections facility constituted escape under section 18-8-208, C.R.S. 2019. Under that 2019 statute, Pennington's actions in this case would have resulted in a class 3 felony escape charge, an offense punishable by up to twelve years in jail.

¶ 14 H.B. 20-1019 changed the type of conduct for which a defendant could be charged with escape. As enacted, the statute now provides that a person serving a direct sentence to community corrections is "not in custody or confinement for purposes of" the statute. § 18-8-208(11), C.R.S. 2020. And leaving and failing to return to a community corrections facility is no longer an escape. *Id.* Instead, such conduct is now an unauthorized absence under section 18-8-208.2, C.R.S. 2020; *cf. Gregory*, ¶¶ 7-8 (discussing unauthorized absence offense under section 18-8-208.2(1)(b), which addresses removal of or tampering with an electronic monitoring device).

¶ 15     In Pennington's case, if the new statute were to apply, a charge of unauthorized absence would be a class 3 misdemeanor punishable by no more than six months in jail.  § 18-8-208.2(2)(b); § 18-1.3-501, C.R.S. 2020.

¶ 16     As relevant here, H.B. 20-1019 reduced the penalty and level of offense for certain walkaways from correctional facilities by redefining custody and confinement to remove certain conduct from the crime of escape and instead categorizing such conduct under the lesser crime of unauthorized absence.  *Gregory*, ¶¶ 37-38.  Such changes are plainly ameliorative in nature.  *Stellabotte*, ¶ 3; *Gregory*, ¶¶ 37-38 (the unauthorized absence provision in H.B. 20-1019 was ameliorative because it mitigated the penalty for the defendant's conduct).  And they are exactly the types of legislative changes that *Stellabotte* held are entitled to retroactive application.  *Stellabotte*, ¶ 3 ("ameliorative, amendatory legislation applies retroactively" unless the statute says to the contrary).

¶ 17     Thus, applying the reasoning of *Stellabotte*, we conclude that H.B. 20-1019 applies retroactively, and that Pennington is entitled to the benefit of its legislative changes.  *See Gregory*, ¶ 6.

¶ 18    We also reject the prosecution's argument that H.B. 20-1019 cannot apply retroactively because it creates a new offense. The *Gregory* division held that H.B. 20-1019 applies retroactively, even though it creates a new offense, because the legislative changes effectuated by the new enactment benefit the defendant. *Id.* at ¶ 41. We agree with that division's reasoning and apply it here.

¶ 19    The prosecution's citation to *Marlott* does not change our conclusion. It is true that in *Marlott*, our supreme court held that the assault statute under the new criminal code could not apply retroactively because "where, as here, the new Criminal Code changes the elements of the crimes, there can be no measure by which to determine whether the standards of punishment have increased or decreased because the crimes are no longer the same." *Marlott*, 191 Colo. at 308-09, 552 P.2d at 494 (footnote omitted).

¶ 20    But Pennington's case is distinguishable from the facts of *Marlott*. Unlike the circumstances in that case, H.B. 20-1019 did not overhaul the entire criminal code. And unlike the legislative change in *Marlott*, H.B. 20-1019 does not present a situation where the elements of escape have been so changed that there is no way to determine "whether the standards of punishment have increased or

8

decreased because the crimes are no longer the same." *Id.* The newly enacted statute clearly changes the category of crime for conduct that was previously chargeable as felony escape. Thus, we conclude that H.B. 20-1019 applies retroactively despite its creation of a new crime.

¶ 21 Pressing further, the prosecution contends that Pennington is not entitled to the retroactive application of H.B. 20-1019 because she has not yet been convicted of a crime. According to the prosecution, a defendant can *only* assert that she is entitled to retroactive application of a legislative change after the defendant has already been convicted. *See* § 18-1-410(1) ("[E]very person convicted of a crime is entitled as a matter of right to make applications for postconviction review."). We are not persuaded.

¶ 22 Section 18-1-410(1) postconviction relief is not the only vehicle for retroactive application of a legislative change to a criminal defendant's case. In *Thomas,* the supreme court held that where the defendant filed his motion for application of the newly revised criminal statute *before* his conviction became final, "[t]he court therefore had jurisdiction to entertain his motion for relief." *Thomas,* 185 Colo. at 397, 525 P.2d at 1137. Subsequent

developments in Colorado law have not disturbed this holding. Indeed, *Stellabotte* held that "relief under an amended statute is available only to those defendants whose convictions were *not final* when the amendment was enacted." *Stellabotte*, ¶ 37 (emphasis added); *accord Gregory*, ¶ 27. Certainly, a defendant who has not yet been convicted does not have a final conviction.

¶ 23 The prosecution contends that H.B. 20-1019 should not be applied retroactively because the new law redefined the crime of escape. According to the prosecution, *Stellabotte* does not permit the retroactive application of legislation that redefines crimes, and that case only permits retroactive application when the legislation either decreases the severity of or reduces the maximum sentence for a crime. We disagree. *Stellabotte* was not so limited. *See Stellabotte*, ¶ 18 (numerous cases held that criminal defendants should get the benefit of amendatory legislation enacted before their convictions became final on appeal). Because H.B. 20-1019 provides such relief to Pennington, and her conviction was not final before enactment, the amendment applies to her case.

### III. Amendment of Pennington's Felony Escape Charge

¶ 24    Our conclusion that Pennington is entitled to the benefit of the statutory change does not end our inquiry, though. The prosecution further contends that the district court erred by amending Pennington's charge from felony escape to misdemeanor unauthorized absence. We agree that the court erred by doing so because this action violated the separation of powers between governmental entities.

### A. Standard of Review and Preservation

¶ 25    Whether a district court violated the separation of powers doctrine is a question of law reviewed de novo. *People v. Reyes,* 2016 COA 98, ¶ 23.

¶ 26    This issue was preserved for appeal.

### B. Discussion

> Article III of the Colorado Constitution provides that the powers of the state government are divided into three different branches — the legislative, executive, and judicial branches — and that "no person . . . charged with the exercise of powers properly belonging to one . . . shall exercise any power properly belonging to either of the others," unless expressly directed or permitted by the Colorado Constitution.

*People v. Mazzarelli*, 2019 CO 71, ¶ 29. Prosecutors belong to the executive branch, and as members of that branch, they are vested with broad discretion to prosecute people for violations of criminal law. *Reyes*, ¶ 24. "The scope of this discretion extends to the power to investigate and to determine who shall be prosecuted and what crimes shall be charged." *People v. Dist. Ct.*, 632 P.2d 1022, 1024 (Colo. 1981).

¶ 27    Prosecutors also have broad discretion to alter or dismiss criminal charges. *Reyes*, ¶ 24. Generally, a prosecutor's discretion in charging or requesting the dismissal of pending charges "may not be controlled or limited by judicial intervention." *Dist. Ct.*, 632 P.2d at 1024; *see also People v. Renander*, 151 P.3d 657, 660 (Colo. App. 2006) ("[I]nterference by a court with the authority of the prosecution to dismiss charges once filed may occur only in limited circumstances: (1) when exercising its supervisory authority to dismiss on constitutional grounds (e.g., infringement of defendant's due process rights); (2) when exercising its supervisory authority to protect the integrity of the judicial process (e.g., prosecutorial misconduct . . . ); (3) upon determination that the evidence is insufficient to support prosecution; or (4) when authorized by

12

statute . . . ."), *superseded by statute on other grounds*, Ch. 362, sec. 7, § 18-6-403, 2006 Colo. Sess. Laws 2056.

¶ 28     We conclude that the district court infringed on the separation of powers when it sua sponte amended Pennington's criminal charge.  In this case, there was no valid reason for the district court to interfere with the prosecution's discretion to charge Pennington by amending her charge from one of felony escape to one of misdemeanor unauthorized absence.  *See Renander*, 151 P.3d at 660.  Instead, upon finding that H.B. 20-1019 applied retroactively, and that Pennington could thus no longer be charged with felony escape, the district court should have simply dismissed the felony escape charge.  *Cf. Harris v. Dist. Ct.*, 843 P.2d 1316, 1319 (Colo. 1993) (if the prosecution cannot establish probable cause, the charged offense must be dismissed).

¶ 29     The district court asserted that it had the authority to amend Pennington's charge because it would have had the authority to do so at a preliminary hearing.  But the district court did not amend Pennington's charge in the context of a preliminary hearing.  Simply because a court has the ability to amend charges at a preliminary hearing does not mean that that authority extends to amending

charges in other procedural contexts. Instead, it is the prosecution that has the authority to decide what a criminal defendant should be charged with if the original charge is no longer available to it. *See Reyes*, ¶ 24 (prosecutors have broad discretion to alter charges).

¶ 30     Given our disposition, the prosecution's last contention — that the district court erred by amending the date of the offense in Pennington's charge — is moot.

## IV.    Conclusion

¶ 31     We affirm the district court's order to the extent that it dismissed the escape charge against Pennington. The district court's amendment of Pennington's charge from one of felony escape to one of unauthorized absence is reversed, and the case is remanded for the district court to dismiss the unauthorized absence charge.

JUDGE RICHMAN specially concurs.

JUSTICE MARTINEZ concurs in part and dissents in part.

JUDGE RICHMAN, specially concurring.

¶ 32    I agree with the majority that the legislative amendments to the escape statute should apply retroactively to Pennington's case, but not for the same reasons advanced by the majority.

¶ 33    The majority relies in part on the division's opinion in *People v. Gregory*, 2020 COA 162, which in turn relied on the opinion in *People v. Stellabotte*, 2018 CO 66, to conclude that the amendments to section 18-8-208(11), C.R.S. 2020, enacted as part of the Prison Population Reduction and Management Act (PPRMA), apply retroactively to Pennington's case.  *See* H.B. 20-1019, 72d Gen. Assemb., 2d Reg. Sess., 2020 Colo. Sess. Laws 23.  I write separately because I do not read *Stellabotte* to clearly apply to this case.  I think the holding of *Stellabotte* is ambiguous; applying the ambiguous holding as the majority does here could create unforeseen circumstances in this case and unanticipated results in future cases, if it is not clarified.

¶ 34    The explicit holding in *Stellabotte* is that "[o]ur decision in *People v. Thomas*, 185 Colo. 395, 525 P.2d 1136 (1974), remains good law."  *Stellabotte*, ¶ 38.  In at least two places, the *Stellabotte* opinion describes the decision in *Thomas* as holding that

15

"amendatory legislation *mitigating the penalties* for crimes should be applied to any case which has not received final judgment." *Stellabotte*, ¶¶ 16, 27 (emphasis added) (quoting *Thomas*, 185 Colo. at 398, 525 P.2d at 1138). The statutory change at issue in *Stellabotte* was a change in the classification of the offense of theft and a revision to the penalties applied to the new classifications. *See id.* at ¶ 6. Thus, the holding of *Thomas,* as stated in the conclusion of *Stellabotte,* fits the facts in *Stellabotte* and directed application of the amendatory legislation to reduce the sentence imposed on the defendant in that case. *See People v. Godinez*, 2018 COA 170M, ¶ 29 (*Stellabotte* clearly "addressed statutes that either decreased the severity of a previously defined crime or reduced the maximum sentence that could be imposed for commission of that crime."). I find that holding and result to be clear, and I have relied on that holding in subsequent opinions that I have authored or joined.

¶ 35     But immediately after stating the holding in *Thomas*, the *Stellabotte* opinion goes on to state that "[a]ccordingly, we hold that ameliorative, amendatory legislation applies retroactively to non-final convictions under section 18-1-410(1)(f), unless the

16

amendment contains language indicating it applies only prospectively." *Stellabotte*, ¶ 38. Giving the word "accordingly" its usual meaning — that what comes next follows from — the statement should read that amendatory legislation that "mitigates the penalties for crimes" is applied retroactively. But instead, without expressly stating so, the court appears to have expanded its holding in *Thomas* to presume retroactive applicability of any type of ameliorative, amendatory legislation.

¶ 36     In my view, this recitation leaves an ambiguity. If the controlling decision of *Thomas*, by its quoted language, applies only when the amendatory legislation mitigates the penalties, the next sentence in *Stellabotte* should logically include that limitation. But because it does not, I remain uncertain whether the supreme court intended to hold that *any* ameliorative, amendatory legislation should apply retroactively to non-final convictions. If so, the relevant language was technically dicta because it was not necessary to decide Stellabotte's case. Although the majority in this case and the majority in *Gregory* read *Stellabotte* to apply to *any* ameliorative, amendatory legislation, I am not certain that is a correct reading.

¶ 37    Whether that is a correct reading is essential to whether

*Stellabotte* applies to Pennington's case.  The PPRMA did not

mitigate the penalties applicable to escape, the offense for which

Pennington was charged under section 18-8-208, C.R.S. 2019, and

it did not modify the classification of the offense.  Instead, as the

majority acknowledges, the PPRMA created an entirely new (lesser)

offense — unauthorized absence from a community corrections

program.  *See* § 18-8-208.2, C.R.S. 2020.  In this regard, the

PPRMA was not amendatory legislation that mitigated the penalties

available for the charges filed against Pennington, as was the case

in *Stellabotte.*

¶ 38    However, the PPRMA did effectively change the definition of

custody or confinement, an element of the offense of escape.  In the

2019 version, only persons placed in community corrections for

residential treatment were "not in custody or confinement" for

purposes of the statute; the 2020 version expanded the categories

of those "not in custody or confinement" to include persons serving

a direct sentence in a community corrections program (like

Pennington).  *Compare* § 18-8-208(11), C.R.S. 2019, *with* § 18-8-

208(11), C.R.S. 2020.  Because the changed definition, if applicable

to Pennington's conduct, would have reduced her offense from a felony to a misdemeanor, it is arguably an ameliorative amendment.

¶ 39    The problem I have with applying *Stellabotte* to this case, and with agreeing with the majority's analysis, is that there is Colorado authority stating that a legislative amendment that substantially changes the definition of a crime does not apply retroactively. *See People v. Marlott*, 191 Colo. 304, 308-09, 552 P.2d 491, 494 (1976); *People v. Ellis*, 41 Colo. App. 271, 274, 589 P.2d 494, 496 (1978). The majority acknowledges the holding from these cases.

¶ 40    In *Marlott* and *Ellis*, the defendants argued that under *Thomas*, the benefits of amendatory legislation should be applied to them, but each decision rejected the argument. In *Ellis*, a division of this court expressly stated, "*Thomas* involved changes in criminal *penalties*, and the argument that it should be extended to changes in substantive criminal definitions was addressed and rejected by the [s]upreme [c]ourt in *People v. Marlott*, Colo., 552 P.2d 491 (1976)." 41 Colo. App. at 274, 589 P.2d at 496.

¶ 41    The majority distinguishes *Marlott* because the PPRMA "did not overhaul the entire criminal code,"[1] *supra* ¶¶ 19-20, like in *Marlott*, and because here, unlike in *Marlott*, we can clearly determine that the punishment for Pennington's conduct is decreased under the new statute.  The majority, however, does not address the statement in *Ellis* that a change in a definition in a statute is not applied retroactively.  *See* 41 Colo. App. at 274, 589 P.2d at 496.  In my view, the holdings of these cases apply to Pennington's case, and *Stellabotte* does not address a situation where the definition of a crime was changed, because those were not the facts in that case.

¶ 42    We are left with conflicting authority in relation to Pennington.  On the one hand, *Stellabotte* appears to state, arguably in dicta,

---

[1] The PPRMA did amend several statutes in addition to modifying statutes related to escape.  It (1) redefined "private contract prison," *see* § 17-1-102(7.3), C.R.S. 2020; (2) prescribed new inmate capacity for the Centennial correctional facility, *see* § 17-1-104.3, C.R.S. 2020; (3) established a new function of the Department of Local Affairs Division of Local Government — to study future prison bed needs, *see* § 24-32-104(3), C.R.S. 2020; (4) added subsections (3) and (4) to section 17-1-104.5, C.R.S. 2020, regarding incarceration of inmates from other states; and (5) revised sentencing hearing requirements for termination from community corrections, *see* § 18-1.3-301, C.R.S. 2020.

that any ameliorative, amendatory legislation applies retroactively to non-final convictions; on the other hand, *Marlott* and *Ellis* explicitly state that a legislative amendment that substantially changes the elements or definition of a crime does not apply retroactively.

¶ 43    I thus write separately to identify this apparent conflict and to urge the supreme court to clarify the breadth of its holding in *Stellabotte*, with respect to its holding in *Marlott.* If the holding of *Stellabotte* is not clarified, and it continues to be applied in any case where amendatory legislation is arguably ameliorative, I am concerned there may be unforeseen circumstances that will interfere with the prosecution of criminal conduct that the General Assembly did not intend to change.  One of these unintended consequences may arise in this very case.

¶ 44    However *Stellabotte* may be clarified, we still must decide whether the district court in this case properly applied the changed definition of "custody or confinement" in the PPRMA retroactively, to dismiss the prosecution's escape charge.  Retroactive application of the PPRMA raises particular concerns here.  There is no doubt that at the time Pennington committed the acts giving rise to the charge

of escape, her conduct, if proven, amounted to a violation of the escape statute. *See* § 18-8-208, C.R.S. 2019. But if the changed definition of custody or confinement contained in section 18-8-208, C.R.S. 2020, is applied retroactively, Pennington cannot be charged with escape.

¶ 45 But can she be charged under the new statute with unauthorized absence? The new statute, section 18-8-208.2, would certainly apply to Pennington's conduct; but it did not become effective until March 6, 2020. As the majority notes, Pennington absented herself from community corrections on February 14, 2020, before the new statute became effective. This raises the question of whether Pennington can be prosecuted for conduct that occurred before the new statute became effective, and whether that is what the legislature intended. If not, does she avoid prosecution altogether because we are applying the PPRMA retroactively to dismiss the escape charge against her? I am not sure of the answer to that question under the facts of this case, and therefore take no position on the issue.

¶ 46 Despite my reservations about applying *Stellabotte*, I agree with the majority that the legislative amendments to the escape

statute should apply retroactively to Pennington's benefit and result in a dismissal of the escape charge. As the majority correctly concludes, the PPRMA is silent as to whether it only applies prospectively. And, as stated above, in my view whether it applies retroactively under *Stellabotte* is uncertain. Thus, I see application of the PPRMA to Pennington's case as an ambiguous proposition.

¶ 47 Because the PPRMA is ambiguous, I turn to the principle of statutory interpretation that requires that we "ascertain and give effect to the legislature's intent . . . [and] effectuate the purpose of the legislative scheme." *People v. Cali*, 2020 CO 20, ¶¶ 15, 16. It is clear from the title of H.B. 20-1019 that the General Assembly's intent in enacting the PPRMA is to reduce the prison population. Accordingly, I conclude that the General Assembly intended the amendments to the escape statute to apply retroactively.

¶ 48 I agree with the majority that the district court's order dismissing the escape charge against Pennington should be affirmed, and I agree with Judge Terry that the district court did not have authority to unilaterally amend the charges.

JUSTICE MARTINEZ, concurring in part and dissenting in part.

¶ 49 I agree with the opinion of Judge Terry, to which I refer as the majority (it enjoys a majority of the panel, albeit with different judges joining each of its two parts), that Pennington is entitled to the benefit of the ameliorative legislation. I part ways with the majority when it concludes that the district court violated the separation of powers under article III of the Colorado Constitution by amending the escape charge to unauthorized absence, and should instead just dismiss the escape charge. Because I do not agree that separation of powers principles prohibit amendment of the escape charge, or that dismissal of the entire escape charge is the benefit of the ameliorative legislation, I respectfully dissent in part.

¶ 50 Although neither of the other two opinions in this case states so directly, it is precisely because unauthorized absence is a subset of the escape charge brought against Pennington that the Prison Population Reduction and Management Act is ameliorative legislation and reduces the penalty to which she is subject. If unauthorized absence were not a subset of escape, *People v.*

24

*Marlott*, 191 Colo. 304, 552 P.2d 491 (1976) — which declined to consider an amended definition of assault as ameliorative legislation because the elements of the offense had been substantially changed from those in the statute under which the defendant had originally been charged — would compel a different result. It is for this same reason, because unauthorized absence is a subset of escape, that principles of separation of powers do not prevent the district court from amending the escape charge to unauthorized absence; in effect, the unauthorized absence charge was brought by the prosecution when it charged Pennington with escape.

¶ 51    The separation of powers doctrine insures "that the three branches of government are separate, coordinate, and equal," and it "imposes upon the judiciary a proscription against interfering with the executive or legislative branches." *Pena v. Dist. Ct.*, 681 P.2d 953, 956 (Colo. 1984). However, this doctrine does not preclude the necessary overlap that occurs between the powers exercised by each branch. *Crowe v. Tull*, 126 P.3d 196, 205-06 (Colo. 2006).

¶ 52    Generally, as members of the executive branch, prosecutors have broad discretion to file or dismiss charges. *People v. Reyes,*

2016 COA 98, ¶ 24. These actions "may not be controlled or limited by judicial intervention." *People v. Dist. Ct.*, 632 P.2d 1022, 1024 (Colo. 1981).

¶ 53    As the majority notes, district courts have discretion to dismiss charges under certain circumstances. *People v. Renander*, 151 P.3d 657, 660 (Colo. App. 2006) (district court may determine unit of prosecution for sexual exploitation of a child), *superseded on other grounds by statute*, Ch. 362, sec. 7, § 18-6-403(5), 2006 Colo. Sess. Laws 2056; *see also People v. Villapando*, 984 P.2d 51, 55 (Colo. 1999) (district court may screen charged offense for probable cause during a preliminary hearing); *People v. Zapotocky*, 869 P.2d 1234, 1243-44 (Colo. 1994) (district court can dismiss pending charges against a defendant on constitutional grounds); *People v. Guenther*, 740 P.2d 971, 975 (Colo. 1987) (district court can dismiss prosecution at pretrial stage pursuant to statute); *People v. Dennis*, 164 Colo. 163, 166, 433 P.2d 339, 340 (1967) (district court can dismiss case where evidence is insufficient to support prosecution); *People v. Auld*, 815 P.2d 956, 957-58 (Colo. App. 1991) (dismissal of case proper if government's conduct violates fundamental fairness and is shocking to the universal sense of justice). But the district

court may also amend or reduce a charge under certain circumstances. *Hunter v. Dist. Ct.*, 184 Colo. 238, 240-41, 519 P.2d 941, 943 (1974) (district court has authority at preliminary hearing to bind over a defendant on a lesser included charge); *People v. Houser*, 2013 COA 11, ¶ 83 (district court may instruct jury on lesser included offense if there is supporting evidence); *People v. Carey*, 198 P.3d 1223, 1234 (Colo. App. 2008) (district court may instruct jury on lesser nonincluded offense if the defendant requests or consents to it); *People v. Scott*, 10 P.3d 686, 688 (Colo. App. 2000) (district court has authority to submit jury instruction on lesser included offense after granting judgment of acquittal on greater offense).

¶ 54    Here, the district court amended Pennington's charge, reasoning by analogy that because it would have had authority at a preliminary hearing to bind over a count that did not suffice as a felony but met the requirements of a misdemeanor, it had the same authority in this circumstance.  The majority contends that there was no valid reason for the district court to interfere with the prosecution's discretion to amend Pennington's charge.  Further, the majority argues that a district court's authority to amend

charges at a preliminary hearing does not extend to amending charges in other procedural contexts. At the same time, the majority acknowledges that a district court may dismiss charges under certain circumstances.

¶ 55    In support of its assertion that amending charges is solely within the discretion of the prosecutor, the majority cites only general propositions of prosecutorial authority rather than any authority prohibiting amendment of charges by the court. *See, e.g.*, *Reyes*, ¶ 24 (prosecutors have broad discretion to alter or dismiss charges). In my view, to the extent that the majority reasons that the district court should dismiss the escape charge, it is inconsistent to hold that the district court may not amend the charge because separation of powers generally prohibits both dismissing and amending charges. However, despite this general prohibition, there are many circumstances in which the district court may dismiss or alter charges. As our supreme court noted in *Crowe*, the separation of powers doctrine does not require absolute division of authority among the branches of government. 126 P.3d at 205-06. Part of this overlap in authority among branches of government permits courts to dismiss charges (1) on constitutional

28

grounds; (2) to protect the integrity of the judicial process; (3) for insufficient evidence to support prosecution; and (4) when authorized by statute. *Renander,* 151 P.3d at 660; *see also Hunter,* 184 Colo. at 240-41, 519 P.2d at 943; *Houser,* ¶ 83; *Carey,* 198 P.3d at 1234; *Scott,* 10 P.3d at 688.

¶ 56    When the district court amended the escape charge to a charge of unauthorized absence, it was effectively dismissing only a portion of the escape charge and allowing the case to proceed on a subset of the initial escape charge. While the majority would require the district court to dismiss the entire escape charge, I do not agree that the district court is somehow prevented by principles of separation of powers from dismissing only a portion of the escape charge and proceeding with the lesser remainder of the escape charge, unauthorized absence. The conclusion that the legislative change to escape confers an ameliorative benefit expresses our best understanding of the intent of the legislature, a conclusion we reach in the absence of an expressed intent by applying legislative guidance and following the direction of our supreme court. Thus, dismissing part of the escape charge and proceeding with the remaining part, unauthorized absence, is both authorized by

statute and a permitted variance from the general principle that dismissing and amending charges is with the providence of the prosecutor.  Therefore, I find no error with the district court's amendment of the offense charged from escape to unauthorized absence.

¶ 57     For the reasons discussed above, I would affirm the judgment of the district court in its entirety.